Melamed *v.* Montefiore Hospital et al., Appellant.

Argued November 13, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Leo Daniels,* with him *Prichard, Lawler & Geltz,* for appellants.

*Patrick M. O'Donnell,* for appellee.

OPINION BY ERVIN, J., December 28, 1956:

This is an appeal by the employer and its insurance carrier from the judgment of the County Court of Allegheny County affirming the decision of the referee and the Workmen's Compensation Board awarding compensation to the claimant under The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, as amended by the Act of July 19, 1951, P. L. 1089, §1, 77 PS §1208(m).

Claimant was employed as an electronic-encephalographer in the Montefiore Hospital, Pittsburgh, Pennsylvania, from September of 1950 until June 10, 1952. The onset of her illness was first noticed on May 14, 1952. Claimant remained home from work for approximately one week and then returned to the hospital where she submitted to tests. Claimant's superior at the hospital, Dr. Yale David Koskoff, informed claimant that she was suffering from tuberculosis and would have to leave work. Subsequently, claimant was examined by other physicians in New York City and then admitted to the Tuberculosis League Hospital in Pittsburgh on September 9, 1952. In November of 1952 she was discharged from the hospital for bed rest at home and was re-admitted to the hospital in February of 1953 and finally discharged in April of 1953. Claimant filed her petition for compensation on April 29, 1953.

The amendment of July 19, 1951, P. L. 1089, 77 PS §1208, to The Pennsylvania Occupational Disease Act included tuberculosis in the list of compensable diseases in the following language: "(m) Tuberculosis in the occupation of nursing in hospitals or sanitaria involving exposure to such diseases."[1] The referee in entering an award found that while employed as an electroencephalographer "That there were over 200 patients treated at Montefiore Hospital for other ailments who were suffering from tuberculosis during the period of claimant's employment there; that her duties brought her in contact with tubercular patients in the hospital, and as a result thereof contracted tuberculosis."

The principal contention of appellants is that the claimant failed to prove she was engaged in the occupation of nursing at any time during her employment by the Montefiore Hospital. The record establishes that claimant had been trained as a nurse although her duties in the employ of Montefiore Hospital were generally those of a technician. In describing the nature of her work claimant testified: "Well, the patients who are either hospital patients or outpatients come to our laboratory for this electro-encephalogram. We measure the heads very carefully, and apply the electrodes for one-half hour on our patient, or possibly an hour or two for a sick patient. The patient may be sitting in a chair, or on a stretcher. We take a report. Wires are attached to the head of the patients. . . . Q. Are these persons who are being tested—do they become sick

---

[1] Though not applicable to this case, this section was further amended by the Act of April 20, 1956, P. L. 1478, No. 488, §1, 77 PS Supp. §1208, to read as follows: "(m) Tuberculosis in the occupation of nursing or auxiliary services involving exposure to such disease."

on occasions while they are being tested? A. Yes, they do. And most likely the ones who get sick are stretcher cases, or brain cases, they very frequently throw up, or we have to give them bed pans. A lot of them are not able to control their bowels. Q. On these occasions who does what is necessary for the patient? A. I do." It thus clearly appears that the duties performed by claimant in administering tests and caring for sick patients were those involved in nursing as that term is generally understood. Claimant had the responsibility of caring for sick persons and others in the performance of her somewhat specialized tasks as a technician. Also, part of claimant's work involved making rounds with her superior to see patients in different sections of the hospital.

Appellants also contend that claimant was at no time exposed to tuberculosis in the performance of nursing services. This contention is clearly without merit as there was positive evidence of specific exposure. The testimony reveals that the Montefiore Hospital, though not a tuberculosis sanitorium, had between 200 and 300 tuberculosis patients during the period of claimant's employment. Though appellants argue that claimant has failed to show exposure to a tuberculosis hazard in that she has identified no tubercular patient to whom she ever administered electronic-encephalograms, the Board, in its initial opinion, fully refuted this argument as follows: "Although the record custodian testified that none of the 200 patients who were tubercular underwent an encephalogram, according to the case record, it does not necessarily follow that this is a negative tuberculosis finding for every patient who did undergo an encephalogram, and whose main distress was in the field of neurology; moreover, the claimant accompanied Dr. Koskoff, her superior,

at different times on his rounds throughout the hospital, in the same capacity as a nurse, and the possibility of exposure cannot be ignored under these circumstances." In the instant case claimant was employed in the hospital for nearly two years. Though her principal duties were in an office on the eighth floor she was not confined to that floor. And while tubercular patients once diagnosed as such were located on the third floor of the hospital, prior to being diagnosed as tubercular such patients could be located anywhere in the hospital. Dr. Yale David Koskoff, claimant's superior, testified as follows: "Q. Did Mrs. Melamed's duties confine her to one particular part of the hospital? A. Generally, her work was in the Laboratory of electro-encephalography which tended to confine her, but not exclusively to that area. *She came in contact with patients when she made occasional rounds with me, occasionally in the rest of the hospital.*" (Emphasis added) This uncontradicted evidence of exposure is amply sufficient to support the award of compensation. In *Neary v. Carbondale General Hospital,* 181 Pa. Superior Ct. 189, 124 A. 2d 470, we held that testimony as to the hazard of tuberculosis in general hospitals, "coupled with the specific testimony of the admission of occasional patients to the hospital while they were suffering from active pulmonary tuberculosis" was sufficient to support an award.

It is well settled that the Occupational Disease Act must be liberally construed in favor of an employe (*Roschak et ux. v. Vulcan Iron Works,* 157 Pa. Superior Ct. 227, 42 A. 2d 280) and the claimant, who has an award, is entitled to the benefit of all inferences from the evidence which are favorable to her. *Schubert v. Oswald & Hess Co.,* 161 Pa. Superior Ct. 309, 54 A. 2d 113; *Neary v. Carbondale General Hospital,*

supra. The testimony in the instant case concerning claimant's care and treatment of sick patients together with evidence of exposure in making the rounds with her superior throughout the hospital which, during her employment, had between 200 and 300 tuberculosis patients; fully supports the award of compensation in this case.

Judgment affirmed.