Kurtz, Appellant, *v.* Erie, Appellant.

558

Argued March 20, 1957. Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

 reargument refused July 25, 1957.

*Gerald A. McNelis,* for plaintiff.

*Maurice J. Coughlin,* Assistant City Solicitor, with him *Gerald J. Weber,* City Solicitor, for defendant.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, May 27, 1957:

The instant controversy requires an interpretation of an Act of the General Assembly commonly called the "Heart and Lung Act".[1]

For approximately thirty-two years, decedent was employed as a salaried fireman by the City of Erie. For some time prior to February 11, 1952, decedent suffered from hypertension with a resultant high blood pressure. Early on the morning of February 11, 1952, a fire occurred at the Calabrese Club in Erie and decedent, acting in the performance of his duties, attended this fire where, after having coupled a fire hose, he collapsed on the side of the fire truck. The court below found that the evidence was "clear, positive and undisputed that the aggravation of Kurtz's dormant heart condition . . . did arise directly out of his 'extreme overexertion' at the Calabrese fire."

Five days later—February 16, 1952—decedent took a sick leave which continued until April 15, 1952, when he voluntarily submitted his resignation as a fireman, which resignation was duly accepted by the City. De-

[1] Act of June 28, 1935, P. L. 477, as amended, 53 PS §327.

cedent never returned to work from that time until his death which occurred on October 21, 1954.

Approximately three weeks subsequent to decedent's death his personal representative (hereinafter called claimant) instituted a suit under the "Heart and Lung Act", supra. In this suit a recovery in the alternative was sought against the City, either of decedent's full salary from February 16, 1952 to the date of death at the rate of $300 per month or a total sum of $9,750, or compensation under the occupational disease provisions of the act at the rate of $30 per week or a total sum of $4,178.48. The City presented a threefold defense to this suit: (1) that the decedent was not a fireman at the time of the institution of suit; (2) that the decedent's injury was not caused by an accident within the provisions of the Act; and (3) that the decedent did not come within the terms and benefits of the Act because he had not been temporarily incapacitated by the performance of his duties.

Upon completion of testimony in the lower court, counsel for the respective parties stipulated that there was no issue of fact for submission to the jury, and that the disposition of the litigation was entirely a matter of law; upon the basis of this stipulation, the matter was submitted to the trial judge for determination without a jury. The trial judge directed the entry of a verdict in favor of the decedent's personal representative and against the City in the sum of $4,294.24.[2] Upon affirmation of the trial judge's action by the court en banc, a judgment was entered on the verdict and these two appeals[3] ensued.

---

[2] This represented the amount claimed under the occupational disease provisions of the Act together with the balance of hospital and medical expenses.

[3] Decedent's personal representative appeals from the judgment on the ground that the verdict should have been for the amount of

Inasmuch as the determination of this controversy depends upon an interpretation and construction of the "Heart and Lung Act", it is necessary that we briefly review the history of this legislation.

In 1935 the Legislature passed an act [4] which provided for the payment by cities (except of the second class A), boroughs, towns and townships of compensation to, and the medical and hospital expenses of, policemen and firemen, who are injured in the performance of their duties and that absence during the period of such injury should not reduce any usual sick leave period. This act provided that any policeman or fireman who was "injured in the performance of his duties" and, by reason thereof was *temporarily incapacitated* from performing his duties, should be paid "his full rate of salary" until the disability ceased, together with all medical and hospital bills.

In 1937 [5] the Legislature clarified the 1935 Act concerning the payments to be made to disabled policemen and firemen and provided for the payment over by the policemen and firemen to the municipality of any payments made to them under the Workmen's Compensation Laws. It is significant that this statute provided for the payment of "salary", rather than "compensation" to the policemen or firemen.

In 1945 [6] the provisions of the 1935 Act were extended to second class A cities; in 1949 [7] its provisions were extended to include firemen performing duties as special fire policemen; in 1951 [8] its provisions were ex-

decedent's full salary and the City appeals on the ground that the verdict should have been in its favor.

[4] See Note 1, supra.

[5] Act of May 14, 1937, P. L. 632, 53 PS §327.

[6] Act of March 29, 1945, P. L. 100, 53 PS §327.

[7] Act of May 11, 1949, P. L. 1081, 53 PS §327.

[8] Act of May 16, 1951, P. L. 301, 53 PS §327.

tended to include park guards; in 1955 [9] its provisions were extended to cover members of the state police force.

The most significant amendment to the 1935 Act took place in 1951 when the Legislature not only extended the provisions of the Act to cover county firemen and policemen but provided for certain disability benefits, in certain classes of cases, for diseases of the heart and tuberculosis of the respiratory system incurred in active police and fire service.

The complete statutory provisions (i.e. the 1935 Act and all its amendments) read as follows: "Any member of the State Police Force or any policeman, fireman or park guard of any county, city, borough, town or township, who is injured in the performance of his duties including, in the case of firemen, duty as special fire police, and by reason thereof is temporarily incapacitated from performing his duties, shall be paid by the Commonwealth of Pennsylvania if a member of the State Police Force or by the county, township or municipality, by which he is employed, his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased. All medical and hospital bills, incurred in connection with any such injury, shall be paid by the Commonwealth of Pennsylvania or by such county, township or municipality. During the time salary for temporary incapacity shall be paid by the Commonwealth of Pennsylvania or by the county, city, borough, town or township, any workmen's compensation, received or collected by a member of the State Police Force or by a policeman, fireman or park guard for such period, shall be turned over to the Commonwealth of Pennsylvania or to such county, city, borough, town or township, and paid into the

9 Act of July 7, 1955, P. L. 259, 53 PS §327.

treasury thereof, and if such payment shall not be so made by the member of the State Police Force or by the policeman, fireman or park guard, the amount so due the Commonwealth of Pennsylvania, county, city, borough, town or township shall be deducted from any salary then or thereafter becoming due and owing. *In the case* of the State Police Force and salaried policemen and *firemen, the diseases of the heart and tuberculosis of the respiratory system, contracted or incurred by any* such member of the State Police Force, policeman or *fireman after four years of continuous service as such, and caused by extreme overexertion in times of stress or danger or by exposure to heat, smoke, fumes or gases, arising directly out of the employment of* any such member of the State Police Force, policeman or *fireman, shall be compensable in accordance with the terms hereof;* and unless any such disability shall be compensable under the compensation laws as having been caused by accidental injury, such disability shall be compensable as occupational disease disabilities are presently compensable under the compensation laws of this Commonwealth.

All payments herein required to be made by the Commonwealth of Pennsylvania shall be made from moneys appropriated to the Pennsylvania State Police." (Emphasis supplied)

An examination of that portion of the statute which antedated the 1951 amendment clearly reveals the legislative intent. Under this part of the statute, a disabled fireman receives his full salary provided (1) that he has been injured in the performance of his duties, and (2) *that the incapacity arising from the injuries is a temporary incapacity.* That this portion of the statute clearly envisages coverage only for temporary incapacity is well established: first, it is expressly stated in the statutory language; second, the provisions requiring

that the employee pay over any monies received by him under the Workmen's Compensation Laws restrict such payments to the time during which "salary for temporary incapacity" is being paid; third, our courts have so interpreted the statute. (*Iben v. Monaca Borough,* 158 Pa. Superior Ct. 46, 43 A. 2d 425; *White v. West Norriton Township,* 158 Pa. Superior Ct. 375, 45 A. 2d 401.) In *Iben v. Monaca Borough,* supra, p. 49, the court stated: "Mingled motives prompted the present act. It contemplates total disability, but no liability of any kind attaches if the disability is permanent, though from injury in the performance of duty." However, claimant seeks to recover under the latter portion of the statute—the 1951 amendment—which provides "the diseases of the heart and tuberculosis of the respiratory system, contracted or incurred by any . . . fireman after four years of continuous service as such, and caused by extreme overexertion in times of stress or danger or by exposure to heat, smoke, fumes or gases, arising directly out of the employment of any such . . . fireman, shall be compensable in accordance with the terms hereof; and unless any such disability shall be compensable under the compensation laws as having been caused by accidental injury, such disability shall be compensable as occupational disease disabilities are presently compensable under the compensation laws of this Commonwealth." It is evident that the Legislature intended "compensation" to be paid under this portion of the statute only under certain circumstances: (1) the fireman must have a heart disease; (2) such heart disease must have been contracted or incurred after four years of continuous service as a fireman; (3) the heart disease must have been caused by extreme overexertion in times of stress or danger or by exposure to heat, smoke, fumes or gases; and (4) such extreme overexertion or exposure must have arisen directly out of the employment of the fireman.

Decedent did have a heart disease which was contracted and incurred after almost thirty-two years of continuous service as a fireman and his heart disease was caused by extreme overexertion in a time of stress and danger and arose directly out of his employment. Decedent therefore met all the statutorily *stated* conditions for compensation.

The question arises, however, whether the heart disease caused a disability compensable under the Act. The evidence in the court below and a stipulation entered into by the parties indicates that decedent's retirement as a fireman "was made necessary by the fact that he was *totally and permanently disabled* due to a heart condition and that he was unable thereafter to be employed in the capacity of fireman of the City of Erie". Decedent's heart disease therefore caused a *permanent* incapacity on his part to perform the normal duties of a fireman.

It is contended by the City that the 1951 amendment provides compensation *only for temporary and not for permanent disability or incapacity...*

The inartistically drawn 1951 amendment simply provides for compensation for the enumerated diseases and makes no provision for the extent of incapacity or disability for which the compensation is to be paid. It, therefore, becomes our duty to ascertain, if possible, through a construction and interpretation of the statute what the legislature intended: Statutory Construction Act of May 28, 1937, P. L. 1019, Art. IV, § 51, 46 PS § 551; *Commonwealth v. Allied Bldg. Credits Inc.,* 385 Pa. 370, 123 A. 2d 686. In ascertaining this intent certain presumptions are applicable: (1) that an unreasonable or absurd result was not intended (*Sherwood v. Elgart,* 383 Pa. 110, 117 A. 2d 899; *Pedrick v. Gordin,* 382 Pa. 26, 114 A. 2d 124) ; (2) that the Legislature did not intend to violate the Constitution (*Baker*

v. *Retirement Board of Allegheny County,* 374 Pa. 165, 97 A. 2d 231) ; (3) that the Legislature intended to favor the public interest as against the private interest (*Jones v. Holes, et al.,* 334 Pa. 538, 6 A. 2d 102). See: Statutory Construction Act of 1937, supra, Art IV, § 52 (5).

Claimant argues that the very fact that the Legislature has enumerated these diseases bespeaks an intent to compensate for permanent disability arising from the diseases. The underlying premise of such argument is that heart diseases and tuberculosis of the respiratory system *always* produce permanent incapacity or disability. It is self-evident, however, that heart diseases and tuberculosis of the respiratory system *do not always* result in a permanent disability. Many, many victims of both diseases—after a period of temporary disability—are fully able to resume their normal activities and work habits. That the mere enumeration of these diseases by the Legislature indicates an intent to include permanent disability is a nonsequitur.

An examination of the statute in its entirety convinces us that the Legislature intended to provide compensation only for temporary incapacity or disability arising from these diseases.

In the first place, all other portions of the statute cover only compensation for temporary incapacity and not permanent incapacity. Had the Legislature intended to extend the coverage under the 1951 amendment from temporary to permanent incapacity, it would have so stated and its silence thereon, both in the title of the amendatory statute and its provisions, is eloquent, albeit mute, testimony of any lack of such intent.

In the second place, the statute explicitly provides the rate of compensation for a fireman who meets the statutory requirements for compensation: if the heart

disease or tuberculosis is subject to classification as an "accidental injury" under the compensation laws, then the disabled fireman is entitled to compensation "under the terms" of the statute which provides that he receive "his full rate of salary" until "the disability arising therefrom has ceased", i. e. temporary disability; but, if the heart disease or tuberculosis is not subject to classification as an "accidental injury" under the compensation laws, then the fireman's disability is compensable as an occupational disease under the Occupational Disease Act, i. e. at a certain amount per week based on a wage percentage basis with certain minimum and maximum weekly payments. How can it be said that legislative language providing for compensation only while disability exists shows an intent to provide compensation for permanent disability or incapacity? The legislative method providing the rate of compensation is indicative of an intent to restrict compensation only to temporary disability or incapacity.

In the third place, to place a construction on the 1951 amendment which would grant compensation on a permanent incapacity basis to a restricted class of municipal employees would cast grave doubts upon the validity of the amendment. *Rich Hill Coal Company et al. v. Bashore,* 334 Pa. 449, 7 A. 2d 302; *Kurtz v. Pittsburgh et al.,* 346 Pa. 362, 31 A. 2d 257; *Akins v. City of York Officers' and Employees' Retirement Board,* 64 York 123, affirmed 368 Pa. 182, 81 A. 2d 883; *Long v. Philadelphia,* 150 Pa. Superior Ct. 631, 29 A. 2d 243; *Iben v. Monaca Borough,* supra.

In line with our duty to construe this amendment in such a manner as to prevent any conflict with the Constitution (*Fidelity-Philadelphia Trust Co. et al. v. Hines,* 337 Pa. 48, 10 A. 2d 553; *Hotel Casey Co. v. Ross et al.,* 343 Pa. 573, 23 A. 2d 737) and to apply the presumption that the Legislature did not intend any

conflict with the Constitution, supra, we prefer to adopt a construction that the Legislature never intended to cover *permanent,* but only *temporary,* disability of firemen arising from a heart disease.

Lastly, if we were to adopt claimant's contention an absurd and unreasonable result would be reached: a fireman under the 1951 amendment who suffers a heart disease in the line of duty would be compensated if he suffered a permanent disability therefrom, whereas a fireman who suffers a broken back or some other bodily injury in the performance of his duties and is thereby rendered permanently disabled would not receive any compensation. It is difficult, if not impossible, to believe that the Legislature attempted to differentiate between permanently disabled firemen on the basis of the nature of the injuries received in determining whether compensation should be paid.

The construction we have adopted is in line with the purpose for the enactment not only of the original, but the amendatory acts: to make more attractive to competent persons service in the police and fire departments of our municipalities. As the Superior Court said in *Iben v. Monaca Borough,* supra, p. 49: "From this limitation it is reasonable to assume that the best interest of the municipality and not the disabled officer was the prime consideration prompting its enactment. Efficient firemen and police officers must take chances; the performance of their duties are hazardous. The prospect of uninterrupted income during periods of disability well may attract qualified persons to these vocations and proper medical attention assures a reasonably speedy return of a temporarily disabled policeman or fireman to service essential to the community."

Under our view of the legislative intent, the Legislature has provided compensation for the enumerated classes of employees who suffer a heart disease or tuber-

culosis in the performance of their duties only during the period of their *temporary* incapacity or disability. While the Act provides for compensation for total disability for a temporary period, it excludes compensation for any disability which is permanent.

The verdict of the court below was awarded on the basis of the evidence and a stipulation that Kurtz was permanently incapacitated by his heart disease: therefore the verdict cannot stand. A recovery against the City cannot be had because the disability suffered by Kurtz was not within the purview of the 1951 amendment.

The appeal of the City is sustained, the judgment entered by the court below is set aside and judgment is directed to be entered in favor of the City and against the claimant.

The appeal of decedent's personal representative is dismissed.

Each party will pay his or its respective costs.

Mr. Justice MUSMANNO dissents.