DeMascola, Appellant, *v.* Lancaster.

Argued September 11, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*W. Roger Simpson,* for appellant.

*F. Lyman Windolph,* with him *Windolph, Burkholder & Hartman,* for appellees.

*Wilson H. Oldhouser,* Assistant Attorney General, with him *David Stahl,* Attorney General, for Commonwealth of Pennsylvania, Department of Labor and Industry, appellee.

OPINION BY WATKINS, J., March 20, 1963:

The claimant, Albert DeMascola, in this occupational disease case, was employed by the City of Lancaster, as a full-time salaried fireman for fourteen years. During this time, as a fireman, he was exposed to heat and flame, excitement, extreme exertion, at times, weather and water, danger from collapsing buildings and other dangers concomitant to a fireman's occupation. He was on duty as a fireman on November 20, 1960, and on that date was engaged in fighting a fire. While pulling sections of a hose off a pumper, without assistance, he suffered very severe pain and had to stop his work. After resting awhile he carried a small hose to a point near the fire. After the fire he drove the fire truck to the fire house.

On March 14, 1961, he filed his claim for compensation. Under the law any award for occupational disease in this case would be paid 60% by the City of Lancaster and 40% by the Department of Labor and Industry, Commonwealth of Pennsylvania, out of the occupational disease fund. The Referee and the Board decided for the claimant; the court below reversed and set aside the award. The claimant appealed and the defendants-appellees are the City of Lancaster, its insurance carrier, Aetna Casualty and Surety Company, and the Commonwealth of Pennsylvania, Department of Labor and Industry.

The legislature added "diseases of the heart and lungs" to the list of compensable diseases enumerated in §108 of the Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, by the amendment of December 10, 1959, P. L. 1746, §1, 77 PS §1208(o), providing as follows: "(o) Diseases of the heart and lungs, resulting in either temporary or permanent total disability or death, after four years or more of service in the full time salaried occupation of fire fighting for the benefit or safety of the public, caused by extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gases, arising directly out of the employment of any such firemen." This is the first case under this amendment to come up for appellate review and its interpretation requires a close examination into the history of the occupational disease law as it sheds light on the intent of the legislature in regard to occupational disease coverage for firemen.

In the original Act the diseases covered were set forth by name, such as, "poisoning by phosphorous", and then provided that the disease is compensable *"in any occupation* (emphasis writers') involving direct contact . . .". It follows from this language that part of the burden of proof of the claimant would be proof that the occupation had an exposure to "poisoning by phosphorous".

The history of this Act also discloses that because of economic conditions a limitation, as to causation, was placed on silicosis, anthraco-silicosis, and asbestosis, so that §301(e) of the Act, 77 PS §1401(e), originally provided compensation for "total disability or death caused *solely,* (emphasis writers') . . .". This however, did not apply to the other diseases listed in the Act. This was amended on January 2, 1952, and the clause was changed by deleting the word "solely" out of the section so that it provided for payment of

compensation for total disability or death "caused by" the disease. After this amendment, without the qualifying condition, compensation is now granted for total disability or death when silicosis is a secondary cause.

This clearly shows that it was the legislative intent, at the time of the adoption of the Occupational Disease Act, to provide for compensation for disability and death caused by the diseases listed when they are a contributing or accelerating cause of the disability or death, except in the silicosis cases. The important factor is that there be a causal relationship of whatever character between the disease and the disability. *Rohner v. Fox Products,* 164 Pa. Superior Ct. 610, 67 A. 2d 605 (1949). It follows, therefore, that it is the burden of the fireman to show only that a causal relationship existed between the heart disease and the disability and it is unnecessary that it be the sole cause of the disability.

The Supreme Court of Pennsylvania in *McIntyre v. Lavino & Co.,* 344 Pa. 163, at pages 165, 166, 25 A. 2d 163 (1942), makes an excellent statement concerning the occupational disease problem:

"Occupational diseases are, from a legal standpoint, peculiar in this—that they arise, not from an accident or event happening at a precise moment, but from a day by day exposure to unhealthful conditions over an extended period; the exact time of their origin is necessarily obscure and their insidious progress is not revealed until, frequently after a long interval, the disability which they create manifests itself. In the case of accidents compensable under the Workmen's Compensation Act [77 PS §1 et seq.], the accident and the damage resulting therefrom, the cause and the effect, are usually determinable immediately and they are practically simultaneous. But, because in disability arising from an occupational disease both cause and effect are protracted and a long interval is apt to

elapse between the exposure and the disability, it becomes necessary to fix a point of time at which the injury which is the subject of compensation shall be deemed to arise and the right to compensation accrue. Accordingly the Occupational Disease Compensation Act of 1937 provides, section 3, that 'The date when the disability occurs from occupational disease shall be deemed to be the date of injury or accident.' Thus it makes the occurrence of the disability the event which constitutes the compensable injury, although the disability is necessarily preceded by an exposure and an occupational disease of which it is the culmination." The occurrence in this case was the pulling of the hose off the pumper at the fire, without assistance, being the "extreme over-exertion in times of stress or danger", as required by the Act. The resultant, sudden disabling pain as described by Judge KELLER, in *Foster v. State College Boro.*, 124 Pa. Superior Ct. 492, at page 496, 189 A. 786 (1937), ". . . is a violent paroxysm of pain arising frequently from some disease of the coronary arteries. It is a manifestation of disease rather than a recognized disease in itself."

Until the adoption of §1208(m) every enumerated "occupational disease" was not applied to any particular occupation but "in any occupation" where there was an exposure to the disease. Section 1401(c) of the Act which reads as follows, "(c) Compensation for the occupational diseases enumerated in this act shall be paid only when such occupational disease is peculiar to the occupation or industry in which the employe was engaged and not common to the general population . . .", is clearly applicable to the enumerated occupational diseases and part of the claimant's burden of proof is that the occupational disease is peculiar to the occupation or industry in question and not common to the general population.

However, this is not true in the case of the three most recent amendments. Section 1208(m) provides coverage for "tuberculosis in the occupation of nursing in hospitals or sanitaria involving exposure to such disease." Here, the legislature has provided that tuberculosis is a peculiar hazard to the occupation of nursing and proof only that the nurse claimant was exposed to the disease in the particular hospital or sanitaria is all that the law requires. *Neary v. Carbondale General Hospital*, 181 Pa. Superior Ct. 189, 124 A. 2d 470 (1956).

Section 1208(n) is a catch-all occupational disease amendment which provides as follows: "(n) All other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation, and (3) which are not common to the general population. For the purposes of this clause, partial loss of hearing due to noise shall not be considered an occupational disease." It is apparent that the provisions of §1401(c) as necessary proof in occupational disease cases are included in this amendment. If the burden of proof required in §1208(n) could be sustained by the claimant-fireman in this case, he would not need the benefit of §1208(o) to secure compensation.

Section 1208(o), supra, sets forth clearly that diseases of the heart and lungs, not in "any occupation or industry", but in the "salaried occupation of fire fighting for the benefit or safety of the public", are occupational diseases of that occupation, if proof is made that the disease of the heart is caused to one of that occupation after four years or more of service by "extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gases, arising directly out of the employment of any such fireman." The legislature, by this latest amendment in the case of fireman, has made it unnecessary to prove that the

disease of the heart or lungs is peculiar to the occupation of firemen and not common to the general population. It is only necessary to prove the existence of the hazards described in the Act. The amendment (o) is later in date and enactment than §1401(c); and is special, while (c) is general.

The legislature has struggled with the problem of occupational disease coverage for employees in the hazardous occupation of fire fighting for many years. It began with the passage of the "Heart and Lung Act" of 1935, P. L. 477, as amended, 53 PS §637, the pertinent parts of which read as follows: "In the case of . . . salaried policemen and firemen, the diseases of the heart and tuberculosis of the respiratory system, contracted or incurred by any of them after four years of continuous service as such, and caused by extreme overexertion in times of stress or danger or by exposure to heat, smoke, fumes or gases, arising directly out of the employment . . .".

The similarity of this language to the occupational disease amendment is apparent and the Act itself was interpreted by the Supreme Court in *Kurtz v. City of Erie,* 389 Pa. 557, 133 A. 2d 172 (1957), and the Court held that the statute, as amended by the Act of May 16, 1951, P. L. 301, provided compensation to a fireman only for temporary and not for permanent disability or incapacity. The Supreme Court pointed out that the legislature ". . . intended 'compensation' to be paid under this portion of the statute only under certain circumstances: (1) the fireman must have a heart disease; (2) such heart disease must have been contracted or incurred after four years of continuous service as a fireman; (3) the heart disease must have been caused by extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gases; and (4) such extreme over-exertion or exposure must have arisen directly out of the employment of the

fireman." It is important, too, to point out that the lower court in the *Kurtz* case found that there was evidence that the aggravation of Kurtz' dormant heart condition arose out of the extreme exertion at the fire. It was held that it was not necessary to prove that the heart disease was caused solely by the exposure but proof of the aggravation of the existing disease was sufficient.

This amendment of the occupational disease Act was the result of the *Kurtz* decision. It was the intent of the legislature to provide in the occupational disease Act compensation coverage for firemen for permanent disability resulting from heart and lung diseases. In the discussion of the Act in question by the General Assembly as set forth in the Legislative Journal-House, October 14, 1959, page 4148, a question was raised as to the difference in coverage between the Act of 1935 and the proposed amendment to the Occupational Disease Act and was answered as follows: "Under the Act of 1935, which is only a provisional coverage wherein the employe who becomes incapacitated as a result of a heart condition or a respiratory condition, only receives his salary for a short period, during the period that he is totally incapacitated. But that is only for a brief duration, whereas this attempts to put it under the Occupational Disease Act, and give the entire protection under it . . .".

The amendment broadened the language contained in the Heart and Lung Act by not including in the amendment the language "contracted or incurred by any such . . . fireman after four years of continuous service as such . . .", so that the proof under the Heart and Lung Act that the disease was contracted or incurred after he was employed as a fireman was not required under this amendment. All that the claimant must establish is that he had more than four years service as a full-time salaried fireman; that he had

heart disease, resulting in temporary or permanent disability caused by extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gases arising directly out of his employment.

The legislature's failure to include the language "contracted or incurred" as provided in the "Heart and Lung Act" is emphasized by the fact that the bill that passed the House read as follows: "(o) Diseases of the heart and lungs resulting in either temporary or permanent total disability or death after four years or more of service in the full time salaried occupation of fire fighting for the benefit or safety of the public *involving* (emphasis writers') extreme over-exertion in times of stress or danger or exposure to heat smoke fumes or gases", but the bill was amended in committee by the Senate to read as the Act was finally adopted: "(o) Diseases of the heart and lungs resulting in either temporary or permanent total disability or death after four years or more of service in the full time salaried occupation of fire fighting for the benefit or safety of the public ~~involving~~ CAUSED BY extreme over-exertion in times of stress or danger or BY exposure to heat smoke fumes or gases ARISING DIRECTLY OUT OF THE EMPLOYMENT OF ANY SUCH FIREMEN."

This indicates a careful consideration of the language of the Act and an intent not to require proof that the heart or lung disease was "contracted or incurred" after he was employed as a fireman but only that it was a heart or lung disease that resulted in temporary or permanent total disability caused by extreme over-exertion, etc., arising directly out of the employment of such firemen.

Although there was evidence of high incidence of heart disease among firemen, this was not necessary to establish liability in this case. The Act itself provides that the diseases named resulted from the hazards of the occupation of fireman. The claimant was then en-

titled to the benefit of the statutory presumption set forth in §301(f) of the Occupational Disease Act, 77 PS §1401(f), which reads as follows: "(f) If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment but this presumption shall not be conclusive." The occupational disease act must be liberally construed in favor of the employe and he is entitled to the benefit of all inferences from the evidence which are favorable to him. *Melamed v. Montefiore Hospital,* 182 Pa. Superior Ct. 482, 128 A. 2d 129 (1956).

In order for the claimant to get the benefit of the rebuttable presumption that the occupational disease arose out of his employment in all cases of enumerated occupational diseases prior to (m), as for example, silicosis, it was not necessary to show that his particular place of work was a silica hazard but only that the "occupation or industry" was one in which silicosis was a hazard. Once this was shown the burden was then on the employer to show, if possible, that the hazard did not exist at the particular place of employment. *Metz v. Quakertown Stove Works,* 156 Pa. Superior Ct. 70, 39 A. 2d 534 (1944). Under the tuberculosis amendment (m) it was necessary to show that the hospital or sanitarium involved had a tuberculosis exposure and if this was shown the claimant was entitled to the benefit of the presumption and if the defendant fails to rebut the presumption the claimant is entitled to benefits. *Neary v. Carbondale General Hospital,* supra. Under the heart disease amendment (o) it was not necessary to prove either that the occupation of a fireman was one with a heart disease hazard nor was the requirement of place of work being a hazard, as required by (n), put in the heart disease amendment.

Silicon dust as a hazard of the "occupation or industry" was required for silicosis; a tuberculosis exposure in the particular place of employment was required in tuberculosis; but only proof of the existence of the fire fighting hazards of extreme over-exertion, etc., is required by (o).

Tuberculosis is a contagious disease so that the exposure to the hazard was proven when patients suffering from it were admitted to the hospital in question. In heart and lung diseases it was necessary only to prove that the fireman was exposed to the hazards set forth in the Act. The intent of the legislature is clearly shown in the language of (o) to be that a full-time salaried fireman after four or more years of service, who suffered from a disabling heart disease caused by his work and its hazards as shown in the record, is entitled to the presumption that his heart disease arose out of and in the course of his employment and the burden of showing the contrary fell on the employer and whether this has been rebutted is for the compensation board. *Jaloneck v. Jarecki Mfg. Co.,* 157 Pa. Superior Ct. 609, 43 A. 2d 430 (1945).

As the award of the compensation authorities was in favor of the claimant the question before the court below and before this Court is well stated in *Crandall v. Dowingtown Iron Wks.,* 188 Pa. Superior Ct. 1, at page 4, 146 A. 2d 312 (1958), as follows: "The statute under consideration is to be liberally construed in favor of the employe: Roschak v. Vulcan Iron Wks., 157 Pa. Superior Ct. 227, 42 A. 2d 280. Our function is to determine whether or not there is substantial evidence to support the findings of the compensation authorities, giving to the claimant, who has the award, the benefit of the most favorable inferences reasonably deducible from the testimony: Masouskie v. Hammond Coal Co., 172 Pa. Superior Ct. 409, 94 A. 2d 55." See also: *Busfield Unemployment Compensation Case,* 191 Pa. Superior Ct. 43, 155 A. 2d 436 (1959).

It is the prerogative of workmen's compensation authorities and not the court to weigh testimony of witnesses and to accept or reject it either in whole or in part. *Smith v. Pull.-Stand. Car Mfg. Co.*, 194 Pa. Superior Ct. 263, 166 A. 2d 299 (1960). The credibility of those qualified as medical experts is not reviewable as a matter of law and the credibility of witnesses is always for the finders of fact. *Bednar v. Westinghouse Elec. Corp.*, 194 Pa. Superior Ct. 10, 166 A. 2d 305 (1960).

The evidence discloses that this claimant was engaged as a fireman for fourteen years; and there was medical testimony that he suffered from heart disease. The hospital tests showed that he had arteriosclerosis with angina symptoms. Dr. Cooper, a heart specialist, testified: "Q. You heard the testimony of Mr. DeMascola as to his activities at the fire on Sunday. He also explained that to you. In your professional opinion, was the exertion of that fire a contributory cause of the heart condition from which he was suffering when you saw him the next day, and from which he still suffers? What is your answer, Doctor? A. I think he had—even though he had a negative test on Friday, I think there was evidence from clinical history of then existing disease. As far as the exertion he engaged in, there is no question in my mind that his work as a fireman produced the symptoms he had on Sunday. I also believe that this attack was more severe and it subsequently led to symptoms on lighter exertion the following day, and in this sense I believe it was a contributory cause to worsening his pre-existing condition."

And further he testified: "Q. Did the episode of November 20th do any permanent damage to Mr. DeMascola? A. Clinically he changed; graphically he changed. Following the exertion of the fire case on Sunday the 20th, he got symptoms on less severe exer-

tion, just bending over to wash and walking steps. Q. Was there any permanent damage to this man's heart as a result of that episode? A. I could not demonstrate a myocardial infarction if that is what you mean. Q. Was any permanent damage done to the heart as a result of this? This must be answered yes or no. A. Yes I believe there was. Q. What was the evidence of permanent damage? A. The clinical symptoms worsening."

The pertinent findings of fact by the board are as follows:

"4. On November 20, 1960, Albert DeMascola, claimant, while laying hose at a fire, experienced a very sharp pain in the middle of his chest and could not continue his employment. Prior to the date of this accidental injury he had experienced some chest difficulties and had been examined by a physician. The pain he experienced on the date of the accident was different from any prior difficulty. The claimant has been employed as a fireman for 14 years, and during this period had attended approximately 80 to 100 fires and had been exposed previously to heat and flame.

"5. Medical witnesses for both the claimant and the defendant stated that the claimant was still disabled and was unable to continue his duties as a fireman at this time, which your Referee finds as a fact. Both medical witnesses agreed that the claimant suffered heart disease.

"6. Dr. Herbert K. Cooper, Jr., witness for the claimant, stated that the fire and the exertion of November 20, 1960 were contributing causes of the claimant's disability and caused permanent damage to his heart, which your Referee finds as a fact.

"7. Dr. Richard H. Mann, witness for the defendant, was of the opinion that the fire and exertion of November 20, 1960 did not cause the heart disease and did not contribute to the claimant's disability.

"9. Your Referee finds as a fact that the disability of the claimant was the result of a disease of the heart resulting after four years or more of service as a salaried fireman, caused by extreme over-exertion in times of stress or danger and exposure to heat and flames arising directly out of the claimant's employment with the defendant."

We agree with counsel for the appellant that it is common knowledge that existing heart and lung diseases may be aggravated by extreme over-exertion and by the type of dangers, such as inhalation of flame and fumes, and exposure to extreme heat, to which fireman by this occupation are exposed. *Foster v. State College Boro.*, supra. It is also possible for a man to have a heart disease without having knowledge of its existence. "It is everyday knowledge that a person may be in apparent good health and perform his daily work for years, although afflicted with a disease of the heart equally unknown to the victim and his associates." *Smolinsky v. Metro Life Ins. Co.*, 149 Pa. Superior Ct. 72, page 77, 26 A. 2d 131 (1942).

In *Foster v. State College Boro.*, supra, where the facts were strikingly similar to those in the instant case, we held a volunteer fireman to be entitled to workmen's compensation as a result of an accident when he suffered a heart attack while running to a fire and pulling a fire hose and where we said at pages 497, 499, 500: "The trouble seems to be due to an attempt to apply to an irregular, unusual and intermittent employment, such as a volunteer fireman, the rules applicable to regular and usual occupations, and because fitfully or spasmodically, at irregular times, a fireman may be called upon to do work which requires great or unusual exertion, to hold that such unusual exertion is his regular, normal activity. No such rule should be applied . . . . Even a paid fireman, who devotes his whole time to such employment, spends most

of his time about the engine house, seeing that equipment is in order, and in drills and in waiting for calls and alarms, and over-exertion in running to a fire on his part, or hurriedly climbing a ladder, or handling heavy hose, if it resulted in dilatation of the heart or cardiac collapse would be accidental, notwithstanding that, in the line of his duty, he is called upon to do it occasionally, but not regularly, or day in and day out, as part of his usual, ordinary and accustomed work. It is unfair and unreasonable, in the very nature of things, to apply to an inherently irregular, intermittent and unusual employment such as this the rules laid down for regular, stable, usual and continued occupations." The legislature had this kind of reasoning in mind when considering occupational disease coverage for firemen.

As we are reversing the action of the court below we will not go into a detailed discussion concerning the duty of the reviewing court to remit the record to the Board for further hearing and determination. Suffice it to say that as questions of fact and law are involved, including causation, the court below was in error in failing to remand. The question is fully discussed in the case of *Shick v. Rimersburg Meth. Church*, 192 Pa. Superior Ct. 527, 532, 534, 162 A. 2d 239 (1960). See also: §427 of the Workmen's Compensation Law, 77 PS §879.

There was sufficient evidence to establish a causal connection between the disability and the heart disease. The fireman was entitled to the presumption that his disabling disease arose out of and in the course of his employment; and the findings of the Board awarding compensation are supported by competent evidence and therefore binding on the reviewing court.

The decision is reversed and the award of compensation by the Workmen's Compensation Board is reinstated.