585 A.2d 56

**Jean EDWARDS, Widow of John C. Edwards, Deceased, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (HUNLOCK TOWNSHIP), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 27, 1990.

Decided Dec. 31, 1990.

James M. Reinert, Kingston, for petitioner.

Matthew D. Dempsey, Lenahan & Dempsey, A.P.C., Scranton, for respondent.

Before PALLADINO and BYER, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

In this workmen's compensation case, Jean Edwards (Claimant), as widow of deceased employee, John C. Edwards, requests review by us of a decision and order of the Workmen's Compensation Appeal Board (Board) which reversed a referee's award to Claimant pursuant to The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.[1]

Basically, the Claimant in this case, widow of a volunteer fireman who met his death in the course of performing his

---

1. This case was reassigned to the opinion writer on November 9, 1990.

volunteer fireman duties, has not been accorded by the Board the decedent's status of a volunteer fireman as established by the Legislature and, consequently, the Board sought to apply to the death of a volunteer fireman requirements of causal relationship which apply in other cases, in disregard of the applicable, more favorable statutory provisions for firemen such as the one in this case. For the reasons that follow, we are required to reverse.

■ First of all, we note that the form of the petition is not controlling in workmen's compensation cases.[2] It has long been established that strictness of pleading is not required in workmen's compensation cases and that, if claimant is entitled to relief under any section of the Act, the petition will be considered as filed under such section. *Andersen v. Workmen's Compensation Appeal Board (National Forge Co.)*, 113 Pa.Commonwealth Ct. 601, 537 A.2d 971 (1988); *Schneider v. Sears, Roebuck & Co.*, 206 Pa.Superior Ct. 282, 213 A.2d 83 (1965).

■ Furthermore, rather than consider the case under Section 301(c)(1) of the Act, 77 P.S. § 411(1), as the Board apparently has done, proceedings here should have been under Section 301(c)(2) of the Act, 77 P.S. § 411(2), on the basis of an occupational disease and specifically proceeded with under Section 108(o) of the Act, added by Section 1 of the Act of October 17, 1972, P.L. 930, *as amended,* 77 P.S. § 27.1(o), which reads:

(o) Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, caused by extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gases, arising directly out of the employment of any such firemen.

The importance to the Claimant of the occupational disease status provided for firemen by the Legislature has

---

**2.** The petition's averments do not specify death from an occupational disease which will appear hereafter to be the case.

been demonstrated at length by our Supreme Court in the case of *Pawlosky v. Workmen's Compensation Appeal Board,* 514 Pa. 450, 462, 525 A.2d 1204, 1211 (1987), where it is stated:

> Indeed, under the Act, it is the claimant seeking to recover for an occupational disease who is given a procedural or evidentiary advantage. Once such a claimant establishes that he has contracted an occupational disease and that the disease, *at or immediately before the date of disability, was a hazard in his occupation or industry,* he then becomes entitled to a non-conclusive presumption that his occupational disease arose out of and in the course of his employment.... (Emphasis added.)

The non-conclusive presumption, of course, is provided by Section 301(e) of the Act, added by Section 3 of the Act of October 17, 1972, P.L. 930, 77 P.S. § 413, as follows:

> (e) If it be shown that the employe, at or immediately before the date of disability, *was employed in any occupation or industry* in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive. (Emphasis added.)

There can be no question that the Legislature has specifically legislated a special status to volunteer firemen, making it clear that they must be considered employes under Section 104 of the Act, 77 P.S. § 22. Thus, Section 601(a)(1) of the Act, added by Section 15 of the Act of December 5, 1974, P.L. 782, *as amended,* 77 P.S. § 1031(a)(1), provides in pertinent part, as follows:

> (a) In addition to those persons included within the definition of the word 'employe' as defined in section 104, 'employe' shall also include:
>
> > (1) members of volunteer fire departments or volunteer fire companies, including any paid fireman who is a member of a volunteer fire company and performs the services of a volunteer fireman during off-duty hours, who shall be entitled to receive compensation in case of

injuries received while actively engaged as firemen or while going to or returning from a fire which the fire company or fire department attended including travel from and the direct return to a fireman's home, place of business or other place where he shall have been when he received the call or alarm ... or while riding upon the fire apparatus which is owned or used by the fire company or fire department or while performing any other duties of such fire company ...

As ruled by this Court in *Marcks v. Workmen's Compensation Appeal Board (City of Allentown),* 119 Pa.Commonwealth Ct. 214, 547 A.2d 460 (1988), it was error for the referee there, and the Board here, to deny to Claimant the benefit of the Section 301(e) presumption. Section 301(e) applies to the enumerated diseases listed in Section 108, including Section 108(*o*) quoted above. *Bley v. Department of Labor & Industry,* 484 Pa. 365, 399 A.2d 119 (1979); *Marcks.*

Indeed, we stated in *Marcks,* as follows:

*It is the legislature's express intent that firemen seeking recovery for occupational diseases resulting from the hazards of their trade be given an evidentiary advantage.* Our Superior Court, analyzing this intent in DeMascola v. City of Lancaster, 200 Pa.Superior Ct. 365, 189 A.2d 333 (1963), noted that the legislature has decreed by enacting Section 108(*o*) that 'diseases of the heart and lungs,' are occupational diseases of the fire fighting occupation. The Court further elaborated that:

The legislature, by this latest amendment in the case of fireman [sic], has made it unnecessary to prove that the disease of the heart and lungs is peculiar to the occupation of firemen and not common to the general population. *It is only necessary to prove the existence of the hazards described in the Act....*

*Id.* 119 Pa.Commonwealth Ct. at 219, 547 A.2d at 463 (emphasis added).

We have here proof of the diseases enumerated in Section 108(*o*) suffered by decedent and causing his death while on

duty, described in the death certificate, R.R. 25a, expressly admitted without objection, R.R. 13a–14a, as follows:

| Immediate Cause | (a) | Acute Myocardial Infarction |
| Due to | (b) | Hypertension |
| Due to | (c) | Chronic Obstructive Pul. Dis. |

So we have here death from "diseases of the heart and lungs," the compensable hazards described in the Act as noted in the above quote from *Marcks,* and of course a death certificate is *"prima facie* evidence of its contents." *Hauck v. Workmen's Compensation Appeal Board,* 47 Pa.Commonwealth Ct. 554, 408 A.2d 585 (1979). We find no competent proofs to rebut the *prima facie* proofs established by the death certificate.

Given that the 56 year old decedent in this case with 25 years of exposure to fires, R.R. 15a, some fires actually attended the month before his death, R.R. 16a, plus the stress of a call as the dispatcher to a fire on the day of his death, although no fire remained when he arrived, plus the recently unaccustomed effort involved in driving a primitive fire truck, it is understandable and legally acceptable for the referee to have found, as he did, that the decedent's death was work-related.[3] *See* Finding of Fact No. 5.

As this Court stated in *Marcks:*

We find that Employer has presented no such competent evidence to rebut this presumption. [Section 301(e) in this case.] The opinion of Employer's medical expert that Claimant's thirty-three years of exposure to the hazards of an occupational disease had a 'practically non-existent' effect on Claimant's heart and lungs, which the referee chose to accept in his Finding of Fact No. 8, is incompetent as a matter of law.

Our Superior Court concluded over twenty-five years ago that:

---

**3.** As noted, this is an occupational disease case requiring not an incident but an extended exposure, four years as provided in Section 108(*o*). Decedent had 25 years.

We agree with counsel for the appellant that it is common knowledge that existing heart and lung diseases may be aggravated by extreme over-exertion and by the type of dangers, such as inhalation of flame and fumes, and exposure to extreme heat, *to which firemen by this occupation are exposed....* (Emphasis added.)

*DeMascola v. City of Lancaster,* 200 Pa.Superior Ct. 365, 379, 189 A.2d 333, 340 (1963).

*Marcks,* 119 Pa.Commonwealth Ct. at 220–221, 547 A.2d at 464.

While the Section 301(e) presumption has not been rebutted in this case, the referee's reliance upon the opinion testimony of Dr. Stone, Decedent's attending physician, although the language could have been clearer, certainly added support for the causal relationship finding. Dr. Stone testified:

Q. If you can, doctor, would you answer the question?
A. The facts I knew surrounding the event as so stated, as far as the question itself, yes, I definitely feel that the event that was surrounding his cause of death was a direct result as to what he was doing at the time.

R.R. p. 36a.

In fact, Dr. Stone, elsewhere in his testimony, clearly attributed the deceased employee's death to a heart attack. Specifically, he testified as follows:

I can state my opinion. In my opinion, his cause of death was an acute coronary event and so stated on his death certificate. Again, there was no autopsy done, however; I've been suspicious throughout his care and felt that at the time of death it was due to an acute coronary event.

R.R. 32a.

The Board does not credit this opinion testimony of Dr. Stone, but instead relies upon excerpts which, in light of the referee's decision in favor of Claimant, the referee, in his exclusive role as fact-finder, could well have properly cho-

sen to reject or factually interpret differently from the Board's view.[4]

It goes without saying, of course, that the Board exceeded its scope of review insofar as it based its decision on the testimony of Employer's medical witness when the referee, exercising his exclusive prerogative, accepted the testimony and opinion of Decedent's attending physician. The Board may not reweigh the evidence, a usurpation of solely the referee's prerogative. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 132 Pa.Commonwealth Ct. 277, 572 A.2d 838 (1990). *See also Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sebro)*, 132 Pa.Commonwealth Ct. 288, 572 A.2d 843 (1990).

The Board, in rejecting some of Dr. Stone's testimony did so on the basis that the hypothetical question put to Dr. Stone included circumstances at the moment of death apparently gleaned from a report to Fire Chief Hines by a registered nurse, a "volunteer fireperson," who was riding with decedent when he suffered his fatal heart attack. Chief Hines' testimony in this regard was not objected to. R.R. 15a. However, as we will later point out, this form of medical presentation as to causation is not required in this case under Sections 108(*o* ) and 301(e). Furthermore, we must disapprove the Board's action in attaching weight to observations of Employer's medical witness, Dr. Groh, since this testimony was not accepted by the referee.

Controlling is the established law that, contrary to the view of the Board, it is unnecessary for the Claimant to establish causal relationship in cases such as this one, since this is granted by the Legislature as a presumption under Section 301(e); although, of course, it can be rebutted.

4. The Board noted the use by Dr. Stone of the word "suspicions" instead of "opinion" in some portions of his testimony. Aside from the fact that a positive opinion is not necessary in this case as we have pointed out, examination of all of Dr. Stone's testimony establishes this as his tentative opinion during his long service as Claimant's physician; it does not weaken his opinion that the "suspicion" became definite as to the nonrebutted cause of death.

Examination of the record in this case reveals no testimony that would rebut the presumption created by Section 301(e) and, therefore, it was error for the Board to require unequivocal medical testimony to establish causal relationship in a case involving a fireman, where it has long been settled that special considerations are statutorily granted to firemen in workmen's compensation cases, and are accorded to volunteer firemen. *Marcks*, 119 Pa.Commonwealth Ct. at 220, 547 A.2d at 463–464; *Bley*.

It is only necessary to again point out that the referee resolved factual issues, such as there were, in favor of the Claimant and, therefore, it was error to deny to this Claimant the benefit of statutory provisions and the presumption provided for firemen by the Legislature. Therefore, we reverse and reinstate the referee's award.

## ORDER

AND NOW, this 31st. day of December, 1990, the order of the Workmen's Compensation Appeal Board, dated January 8, 1990, at Docket No. A–97589, is hereby reversed and the decision of the referee is reinstated.

PALLADINO, J., filed a dissenting opinion.

PALLADINO, Judge, dissenting.

I respectfully dissent.

I believe the majority has not only overlooked the equivocal nature of the medical testimony, but has ignored the statutory requirements that must be met before the presumption of compensability for occupational diseases can be applied. The following factual background is helpful.

On May 14, 1985, John C. Edwards (Decedent), a volunteer fireman, was called to assist in fighting a brush fire, and was asked to drive a 1967 tanker truck to the scene. Decedent performed this activity in the past. Upon arriving at the scene, Decedent was told to return to the firehouse because the brush fire had been extinguished. Shortly after returning to the fire station, Decedent was stricken by

a condition which ultimately lead to his death. Decedent's personal physician, Dr. Donald J. Stone, without reviewing the emergency room records or personally examining the Decedent, listed the cause of death as acute myocardial infarction.

Claimant filed a fatal claim petition alleging that Decedent's heart attack occurred in the course and scope of his employment as a volunteer fireman with Hunlock Township (Employer). Employer filed an answer to the petition denying that Decedent's death was work-related, and alleging that any heart attack was related to a pre-existing condition and not affected or caused by his employment.

Following a hearing, the referee issued a decision in which he found that Decedent's death was directly caused by his employment and granted the fatal claim petition. The following pertinent parts of the findings of fact are relevant:

3. ... [T]he Fire Chief of Hunlock Township Fire Company was called and he testified that the Decedent had been within the volunteer corps for 21 years and that he served as a Treasurer, drove a truck and was also a dispatcher.... The witness further indicated that the vehicle driven by the Decedent was a 1967 truck, had a manual shift, was a difficult vehicle to drive, and that although the decedent had driven the vehicle in the past, he had not driven the particular vehicle for a number of months prior to this incident....

4. The medical evidence presented established unequivocally that although no autopsy was performed, the Decedent had in fact died from a coronary incident, episode or infarct, and the only disagreement between the two Doctors, was whether the events of the day, the driving of the truck, the stress of a fire or other precipitating factors in fact caused death. Dr. Grow, on behalf of the Defendant, opined that it did not, while Dr. Stone, on behalf of the Decedent, opined that it had.

5. The Referee is satisfied, however, from this record that the Claimant has sustained her burden of proof in

establishing a relationship between the incidence of the day and the ensuing death. As the Chief of the Fire Department indicated, the vehicle in question, was a difficult vehicle to drive, that it had a manual shift which created part of th [sic] difficulty and that although the Decedent was experienced in driving it, he had not driven it for a number of months, and as a result, and because of the stress of responding to fires, the Referee feels that these are key factors in buttressing the medical testimony of Dr. Stone....

Employer appealed to the Board which reversed, finding that there was no proof of stress in the record to support the hypothetical question posed to Decedent's treating physician, Dr. Donald Stone, and that Dr. Stone's testimony was not legally sufficient to show a causal relationship between Decedent's employment and his death.

Because the death certificate listed the cause of death as acute myocardial infarction, and because Decedent had been a volunteer fireman for more than four years, the majority concludes Decedent had an occupational disease as defined by section 108(*o*) of the Act. However, these two facts, in and of themselves are legally insufficient to establish an occupational disease under section 108(*o*).

Under this section of the Act, the Claimant must establish that he actually had the occupational disease in question, *Harrigan v. Workmen's Compensation Appeal Board,* 40 Pa.Commonwealth Ct. 390, 397 A.2d 490 (1979), and that the disease of the heart and/or lungs was caused by "extreme overexertion in times of stress or danger or by exposure to heat, smoke, fumes or gases, arising directly out of the employment ..." as a fireman. These two factors are the basis of the dispute in this case.

Addressing the cause of death issue first, Claimant had the burden of proving that Decedent's death was a result of an occupational disease, i.e. a disease of the heart, *Purex v. Workmen's Compensation Appeal Board (Oden),* 70 Pa. Commonwealth Ct. 548, 454 A.2d 203 (1982), which burden of proof requires substantial competent medical evidence

that Decedent died as a result of a heart condition. When there is a dispute[1] as to the existence of an occupational disease, unequivocal medical testimony is necessary. *See Werner v. Workmen's Compensation Appeal Board (Bernardi Bros., Inc.)*, 102 Pa.Commonwealth Ct. 463, 518 A.2d 892 (1986).

> Where medical testimony is necessary to establish a causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause.

*Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 508 Pa. 360, 365, 498 A.2d 800, 802 (1985). The determination of whether medical testimony is unequivocal or not is a question of law, determined by reviewing the entire testimony of the medical witness. *Id.*

Claimant introduced the death certificate to show that the cause of death was an acute myocardial infarction. While a death certificate is prima facie evidence of the cause of death *Hauck v. Workmen's Compensation Appeal Board*, 47 Pa.Commonwealth Ct. 554, 408 A.2d 585 (1979), it is not

---

1. The Employer's theory was that Decedent choked to death. Dr. Stone testified on this issue as follows:

Q. Doctor, did you review the emergency room record with regard to his admission when he was DOA?
A. I don't remember doing that, no.
Q. Do you know whether or not they found a wad of tobacco lodged in his throat?
A. I don't know?
Q. Do you know whether or not, the history in the record indicate [sic] that he was gasping for air and that he appeared to be, had a straight ahead stare and was holding his throat?
A. I don't recall that, no.
Q. Doctor, would that be consistent with an asphyxiation?
A. I'm sure that if the patient suffered some kind of cardiac event that he could also asphyxiate if he had anything in his mouth, including saliva or any other foreign.
Whether the asphyxiation occurred first or a coronary event occurred first, I don't have an opinion to that.
Q. Doctor, if the record showed that he had food particles and a wad of tobacco lodged in his throat and which were blown out by suction, could he have choked to death as a cause of death?
A. I think there's a reason that he could, yes.
Deposition of Dr. Stone at 23–24.

conclusive evidence of the cause of death. *Id.* In the present case, Decedent's personal physician, Dr. Stone, demonstrated in his testimony, that he was not reasonably sure of the cause of death, even though he had listed the cause of death on the death certificate as an acute myocardial infarction.

Q. Doctor, am I correct in stating that without an autopsy we can't say within a reasonable degree of medical certainty what the cause of Mr. Edwards' death was?

A. I can say with a reasonable medical background yes. I think, in my opinion, he suffered from an acute coronary event.

. . . .

Q. Doctor, this patient you said had coronary artery disease or you suspected he had coronary artery disease?

A. I suspected.

Q. Would you be able to state that within a reasonable degree of medical certainty, doctor?

A. Yes.

Q. Do you suspect that he died of a heart attack or of a coronary event—strike that—or is it your opinion that he did?

A. I'll say, in my opinion, I have a high indicis [sic] suspicion that Mr. Edwards' demise was a direct result from a coronary event.

Q. You again agree then and it's your opinion that he had coronary artery disease, is that correct, prior to his demise?

A. In my opinion, I state I had a high indicis suspicion that Mr. Edwards had coronary disease.

Deposition of Dr. Stone at 10–12. Viewing Dr. Stone's testimony as a whole, there is no degree of certainty as to the cause of Decedent's death. A "high indicis suspicion" and a feeling that the death was due to a coronary event, is not unequivocal testimony.

The majority relies upon a single response of Dr. Stone to conclude that the evidence supports the referee's decision in favor of the Claimant. However, the testimony must be reviewed in its entirety. As the above excerpt shows, when Dr. Stone was asked directly whether Decedent had coronary artery disease, he did not reply in a definite manner, but could only state within a reasonable degree of medical certainty that he "suspected" Decedent had the disease and a "high indicis suspicion" that the disease was present. Accordingly, I believe that the medical testimony in support of Claimant's claim that Decedent had a heart condition, is equivocal and insufficient as a matter of law.

On the issue of the existence of stress, even if it were assumed that Decedent suffered from a disease of the heart, section 108(*o*) requires that the death be a result of "extreme over-exertion in times of stress or danger." On this issue Dr. Stone testified as follows:

Q. Do you know the circumstances immediately proceeding—strike that—do you know the cause of his death?

. . . .

A. I can state my opinion. In my opinion, his cause of death was an acute coronary event and so stated on his death certificate. Again, there was no autopsy done, however; I've been suspicious throughout his care and felt that at the time of death it was due to an acute coronary event.

. . . .

Q. Based on your knowledge of your treatment of Mr. Edwards and in light of the—are you familiar with the circumstances, as a matter of record, the basis for a hypothetical question I think has been presented in that the testimony that has been presented as a matter of record in this case indicates that Mr. Edwards was a fireman, was summoned to drive the fire truck, which I believe was a tanker fire truck, to the scene of a fire. He was in the process of doing this when he was directed to

return to the fire hall. As he was backing the fire truck into the garage, he suffered this cardiac experience.

Based on those hypothetical facts and based on your prior treatment of Mr. Edwards, can you state with reasonable medical certainty whether the strain or excitement of the situation encountered by Mr. Edwards could have been a substantial contributing cause of his death?

. . . .

A. The facts I knew surrounding the event as so stated, as far as the question itself, yes, I definitely feel that the event that was surrounding his cause of death was a direct result as to what he was doing at the time.

Deposition of Dr. Stone at 6–10.

A hypothetical question must be based on facts which appear in the record. *Borough of Morrisville v. Workmen's Compensation Appeal Board*, 54 Pa.Commonwealth Ct. 41, 419 A.2d 813 (1980). If a hypothetical question is based upon facts not of record, the response to the question is not competent. *Lamoreaux v. Workmen's Compensation Appeal Board*, 92 Pa.Cmwlth. 1, 497 A.2d 1388 (1985). The hypothetical question posed to Dr. Stone contains a reference to "strain or excitement of the situation encountered by Mr. Edwards...." The only evidence of record of any stress was the following question put to the fire chief, Donald Hines:

Q. Is there any anxiety—do you experience any anxiety or aggravation in fighting a fire?

A. Yes.

However, there was no evidence that Decedent actually fought a fire on the day of his death, or that he was subjected to extreme over-exertion in a time of stress or danger. As a result, the hypothetical was based upon facts not in the record, and the connection between extreme over-exertion, stress or danger, and Decedent's death, was not established by the record.

Finally, the majority's reliance upon *Marcks v. Workmen's Compensation Appeal Board (City of Allentown)*,

119 Pa.Commonwealth Ct. 214, 547 A.2d 460 (1988) is misplaced. In *Marcks* the record established that the Claimant had been exposed to smoke, fumes, and gases for the statutory period. This evidence is lacking in this case. While the record indicates that Decedent was a volunteer fireman for 21 years, the record also only indicates that Decedent served as treasurer, drove a truck and was a dispatcher. The record contains no evidence that Decedent was exposed to smoke, fumes, or gases for more than four years, or that he engaged in extreme over-exertion in times of stress or danger. Without such evidence, even if Decedent had a disease of the heart, no occupational disease can be found, as a matter of law.

Accordingly, for the above reasons, I would affirm the decision of the Board.