## Metz et al. *v.* Quakertown Stove Works et al., Appellants.

Argued September 25, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Paul H. Ferguson,* with him *G. Mason Owlett,* for appellants.

*Frederick L. Fuges,* with him *Ralph N. Kellam,* for appellee.

OPINION BY KELLER, P. J., October 27, 1944:

These two claims arose under the Occupational Disease Compensation Act of June 21, 1939, P. L. 566, as amended by Act of June 12, 1941, P. L. 125, effective on its passage.

The first claim (No. 90,808) was filed by the employee, Morris Metz, on December 17, 1941, and set forth that he became totally disabled on September 27, 1941, as a result of silicosis. The second (No. 92,602) was filed by his widow, Annie L. M. Metz, and averred that her husband died on January 10, 1942, as a result of silicosis. The claims were heard together after the employee's death. The referee awarded Mrs. Metz, as dependent widow of the claimant in No. 90,808, compensation at the rate of $17.29 per week for 14 weeks, from October 4, 1941, (one week after his total disability began) to January 10, 1942, the date of his death, 50% thereof to be paid by the insurance carrier of the employer, Quakertown Stove Works, and 50% by the Commonwealth of Pennsylvania; and under

claim No. 92,602, awarded the widow claimant the sum of $11 per week for 286 weeks beginning January 10, 1942, 50% thereof to be paid by said insurance carrier and 50% by the Commonwealth.

These awards and the findings of fact and conclusions of law on which they were based, on appeal to the board, were affirmed; and on appeal from the board to the court of common pleas, the exceptions were dismissed and judgments were entered on the awards.

The insurance carrier for the employer appealed to this court. The Commonwealth appealed from the referee's awards, but is not an appellant here.

Under the applicable Act of assembly it was incumbent on the claimants to prove two things:

(1) That the employee's total disability and death respectively were caused solely by silicosis as described in sec. 108(k) [1], either alone or accompanied by active pulmonary tuberculosis (Sec. 301(a) ).

(2) That the employee had had an aggregate employment of at least four years in this Commonwealth, during a period of eight years, next preceding his disability, in an *occupation* having a silica hazard (Sec. 301(d) ), and that Quakertown Stove Works was the last employer in whose employment he was exposed to such hazard. (Sec. 301(g) )

The issues of fact involved in this appeal grew out of the above provisions of the act. The claimants averred that they had proved compliance with the act in those respects; the employer's insurance carrier denied (1) that the employee's total disability and death had been caused by silicosis and averred that the cause of disability and death was pulmonary tuberculosis, unaccompanied by silicosis; and denied (2) that he had been employed at any time during the period of eight years next preceding the date of disability by the defendant in an occupation having a silica hazard.

---

[1] "Silicosis ...... in any occupation involving direct contact with, handling of, or exposure to dust of silicon dioxide ($Si\ O_2$)."

The referee, and, on appeal, the board resolved these issues of fact in favor of the claimants, and the real question before us is whether there is sufficient competent evidence in the record to sustain the board's action affirming the referee's findings of fact; and whether the conclusions of law and the award are sustained by the findings.

(1) On the first point at issue, the appellant does not now seriously dispute the validity of the finding that the employee Metz's total disability and death were caused by silicosis complicated by pulmonary tuberculosis. It was supported by the testimony of Dr. Hetherington and Dr. Tice, physicians called by the claimant. Dr. Pendergrass, called by the defendant's insurance carrier, testified that the cause of death was pulmonary tuberculosis and that he was unable to make a diagnosis of silicosis, in connection with it. The board found that the referee had correctly decided this issue of fact and accordingly affirmed his finding. As it is amply supported by the evidence, it will not be disturbed by us.

(2) The second issue may be briefly stated to be whether there is sufficient competent evidence in the record to support the finding that the employee was employed by defendant in an occupation having a silica hazard for an aggregate of at least four years, in the eight years next preceding the date of his disability.

It is admitted that the employee claimant worked in Pennsylvania for the defendant continuously from 1899 to September 26, 1941, with the exception of the year 1919—that is, for 41 years. Originally he was superintendent of the polishing and plating department of the defendant's stove works, but for the last three or four years, as business had dropped off, he had been doing only polishing work. Prior to 1932 the defendant company operated its own foundry wherein its iron castings were molded and rough ground. The castings were then taken to the finishing departments, which included the polishing and plating department.

In 1932 defendant discontinued its foundry, and thereafter bought the iron castings needed for its stoves and restaurant equipment, rough ground, but the *polishing* was done by claimant or under his immediate supervision. Claimant did the polishing in two ways, by hand and by machine. In hand polishing leather and canvas wheels faced with artificial emery were used, while in machine polishing a solid carborundum wheel was used, along with leather and canvas emery-faced wheels. The abrasives used consisted of Turkish natural emery and Aloxite and Alundum (trade names for artificial emery) and carborundum. The widow claimant testified that during the latter years of his employment, her husband washed at home; that his clothes were dirty and sandy; and that he could never wear a white shirt because it would get rusty.

The appellant in effect admitted that if the defendant company had continued to conduct its own foundry, the occupation would have been one with a silica hazard; but having shown that it had discontinued its foundry more than eight years before the employee claimant's total disability had begun, it contended that the work of polishing castings which had been furnished to it rough ground was not an occupation with a silica hazard; but it produced no proof to that effect. It *assumed* that 'rough grinding' removed every particle of sand from the casting. The evidence was to the contrary—that from time to time Metz was called upon to grind a casting on which sand still remained.

The Act of 1939 contained a very important and material provision in section 301(f), as follows: "If it be shown that the employe, at or immediately before the date of disability, was employed in any *occupation or industry* in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be con-

clusive." (Italics supplied). It will be noted that the employee is not called upon, in order to get the benefit of this rebuttable presumption to show that the particular factory or plant in which he worked was a silica hazard, but only that the *occupation or industry* was one in which silicosis was a hazard, leaving it then to the employer to show, if possible, by facts and circumstances within its knowledge and control, that its particular factory or plant had been so conducted or carried on as to avoid or get rid of that hazard.

Section 301(f) has nothing to do with the fixing of liability between successive employers, as suggested by appellant's counsel. That is taken care of by section 301(g).

The act recognizes that it may be unreasonably difficult for the individual employee claimant to show that his particular place of employment was so conducted or carried on as to be an occupational disease hazard, and therefore provided that if the *occupation or industry* in which he was employed was one in which the occupational disease from which he is suffering was a hazard, it shall be presumed (but not *conclusively*) that his disease arose out of and in the course of his employment. If the claimant is required to *prove* that the particular plant or place of business where he was employed constituted an occupational disease hazard, there would be no need whatever to help out the claimant with any presumption.

At the hearing Dr. Hetherington, an expert in pulmonary diseases, including silicosis, who had made many studies and examinations of employees in various industries, with the object of determining the incidence of silicosis and the severity of the various abnormalities due to this disease—his examination including foundry workers, pottery workers, asbestos industries and anthracite coal mines—testified that in his professional opinion a polisher of cast iron stove parts is

employed in an occupation in which silicosis is a hazard.

Carborundum, which is used as a wheel for polishing iron castings by machine is described in the Encyclopedia Britannica Vol. 5, p. 313—11th ed.—as "a silicide of carbon formed by the action of carbon on sand (silica) at high temperatures." Mention is made of it in Chamber's Technical Dictionary as "See silicon carbide."—and silicon carbide is defined, "Formed by fusing a mixture of carbon and sand or silica in an electric furnace at a very high temperature. Used as an abrasive and refractory. Also known as Carborundum and Carbon silicide."

We think that Dr. Hetherington's testimony was sufficient to bring the case within the provision of clause (f) of section 301, and warranted a presumption—and, in the absence of sufficient countervailing proof, a finding,—that as the employee claimant had been working for more than eight years continuously in and about polishing iron castings by hand and machine, using carborundum wheels, and leather and canvas wheels faced with Turkish emery, aloxite and alundum, the silicosis from which he was suffering and which caused his total disability and death arose out of and in the course of his employment with the defendant company, especially in view of the fact that the defendant and its insurance carrier produced no evidence whatever to rebut the statutory presumption or prove that silicon dioxide, the active agent causing or resulting in silicosis, could not be produced by the use of carborundum, Turkish emery, aloxite or alundum on rough ground castings, and showing the ingredients of the last three abrasives and that they did not contain silica and could not form the dust of silicon dioxide.

The findings of fact of the referee, adopted by the board were accordingly supported by sufficient competent evidence and as they sustain the conclusions of law and awards, the assignments of error are overruled and the judgments are severally affirmed.