**Powichka, etc., v. Glen Alden Coal Company et al.**

Before Flannery, Lewis and Pinola, JJ.

*Nathan Hyman* and *Paul R. Orrson*, for claimant.

*J. H. Oliver, Franklin B. Gelder* and *Gilbert S. McClintock*, for Glen Alden Coal Company.

*Andrew J. Zawoiski*, for Commonwealth.

PINOLA, J., June 13, 1952.—In this case defendants have filed exceptions to the affirmance by the Workmen's Compensation Board of a referee's award under the Occupational Disease Act.

While they are numerous and affect practically all the findings and conclusions made by the referee and affirmed by the board, at argument defendants abandoned all but one.

It is admitted that claimant was permanently and totally disabled solely by anthraco-silicosis. The sole question remaining is whether claimant established that he had been exposed to a silica hazard for four years out of the last eight years of his employment. Defendants contend that he was not so exposed, in spite of the fact that he had worked for 45 years for the Glen Alden Coal Company in the one breaker.

We must, therefore, decide whether there is sufficient competent evidence to support the finding that claimant's disability arose out of his employment: Segs v. Consumers Mining Company et al., 167 Pa. Superior Ct. 308. In doing so, we, as has been said many times before, must consider the evidence in the light most favorable to claimant and he is to be given the benefit of all inferences reasonably deducible therefrom: Manikowski v. Morris Run Coal Mining Company, 163 Pa. Superior Ct. 118.

Claimant testified that he was employed by defendant from 1905 to August 7, 1950; that his occupation was "plate boss" in the breaker of the Woodward Colliery of defendant company, where from 60 to 75 gondola cars, each containing 60 to 70 tons of coal, were processed daily; that this coal was mixed with rock,

all of which was wetted down as it was emptied from the gondola cars and placed in a conveyor line which carried it to the top of the breaker. From there, the coal passed over a "platform" after again being wetted. It was at this platform that claimant supervised the extraction of rock from the coal as it passed over it in a layer some 13 to 14 inches thick. It is admittedly impossible to extract all of the rock from the coal and as a result some rock was crushed along with the coal by the rollers. The coal was "strip" coal as distinguished from deep mine coal, and contained as high as 50 percent rock. Two sets of rollers were located some 12 feet away from claimant's place of employment, and others, six sets all told, were located elsewhere below him. The breaker is not partitioned nor does it have flooring at the various levels so that dust produced by the rollers from below was able to and did rise to the top of the breaker. The testimony of claimant as to the presence of dust in the air was strongly supported by fellow workers who testified that the dust was visible around the lights.

The employer's safety engineer testified that dust tests were made at the breaker after claimant's disability arose, on February 26, 1951, March 8, 1951, and March 19, 1951; that these tests showed a variation in total dust content from 4,400,000 to 13,500,000 particles per cubic foot and a variation in silica from 1.3 percent to 1.9 percent, having a varying free silica count per cubic foot of from 74,800 particles to 167,000 particles. He testified generally that conditions in the breaker were the same for the preceding eight years.

Defendants contend that claimant has not shown that he was employed "in any occupation or industry in which the occupational disease is a hazard," and therefore, the presumption that his occupational disease arose out of and in the course of his employment, did not arise, and that having undertaken to prove

that the particular plant in which he worked involved a silica hazard, he failed to meet the burden.

Sections 301 (d) and (f) of the Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, as amended, 77 PS §1401, provide:

"(d) Compensation for silicosis or anthraco-silicosis, and asbestosis, shall be paid only when it is shown that the employe has had an aggregate employment of at least four years in the Commonwealth of Pennsylvania, during a period of eight years next preceding the date of disability, in an occupation having a silica or asbestos hazard.

"(f) If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive."

In construing this section, the court said in Metz et al. v. Quakertown Stove Works et al., 156 Pa. Superior Ct. 70, 75:

"It will be noted that the employee is not called upon, in order to get the benefit of this rebuttable presumption to show that the particular factory or plant in which he worked was a silica hazard, but only that the *occupation or industry* was one in which silicosis was a hazard, leaving it then to the employer to show, if possible, by facts and circumstances within its knowledge and control, that its particular factory or plant had been so conducted or carried on as to avoid or get rid of that hazard. . . .

"The act recognizes that it may be unreasonably difficult for the individual employee claimant to show that his particular place of employment was so conducted or carried on as to be an occupational disease hazard, and therefore provided that if the *occupation*

or *industry* in which he was employed was one in which the occupational disease from which he is suffering was a hazard, it shall be presumed (but not *conclusively*) that his disease arose out of and in the course of his employment. If the claimant is required to *prove* that the particular plant or place of business where he was employed constituted an occupational disease hazard, there would be no need whatever to help out the claimant with any presumption."

In that case claimant called, as his witness, an expert in pulmonary diseases, including silicosis, who had made studies and examinations of employes in various industries to determine the incidence of silicosis, etc., and he testified that in his professional opinion a polisher of cast iron stove parts is employed in an occupation in which silicosis is a hazard. This was held sufficient to raise the presumption found in section 301(*f*).

In this case it was not necessary for claimant to prove that the industry involved the silica hazard. It is generally known, as the board pointed out, that: "The occupational disease from which [the claimant] suffers is one which is peculiar to the occupation or industry in which he was engaged and is not common to the general population."

On many previous occasions the board has taken judicial notice of the fact that a silica hazard is peculiar to the anthracite coal industry. In Kruskie v. P. & R. Coal & Iron Co., 33 Dep. Rep. 528 (1947), where claimant who had worked outdoors, scooped the coal up in bins when the drag line would not take it up and cleaned up under a shed where there was a lot of dust, and an award was allowed, the board said (p. 531):

"A realistic view must be taken of the existing facts and circumstances in this case . . . Silicosis and its companion disease, anthraco-silicosis, are now well established as peculiar to the anthracite coal industry."

As was the board, we are required to take judicial notice that claimant was employed in an industry in which the occupational disease is a hazard. Judicial notice is taken of what is within the knowledge of most men. The test has been said to be: Is the fact one of common everyday knowledge in the jurisdiction, which everyone of average intelligence and knowledge of things about him can be presumed to know?: Pearson v. London, 102 Pa. Superior Ct. 176.

In Roush, Admr., v. Metropolitan Life Insurance Company, 116 Pa. Superior Ct. 162, the court took judicial notice that pernicious anemia is a serious disease and said (p. 165):

" 'Courts will take notice of whatever is generally known within the limits of their jurisdiction'; and that this principle extends to such matters of science as are involved in the cases brought before them."

Dr. Edward Bixby, one of the outstanding physicians of northeastern Pennsylvania, when asked:

"Q. In connection with your specialty of internal medicine have you seen and examined many anthraco-silicosis cases?"

Answered:

"Yes."

And when asked:

"Can you give us any idea how many, Doctor?"

He replied:

"I really haven't, but I customarily see many cases at the State Tuberculosis Clinic and also for the past three years I have been an impartial examiner for the anthraco-silicosis cases, and anybody *living in this county* is bound to see many cases in his private practice."

The danger resulting from the presence of dust was recognized long ago by the legislature. In article XII, rule 23, of the Anthracite Mining Laws Act of June 2, 1891, P. L. 176, 52 PS §292, it expressly declared:

"In all coal breakers where the coal dust is so dense as to be injurious to the health of persons employed therein, the owner, operator or superintendent of said breaker shall, upon the request of the inspector, immediately adopt measures for the removal of the dust, as far as practicable."

Recognizing that anthraco-silicosis is a hazard of the industry, defendant, the Glen Alden Coal Company, and all other mining concerns have agreed with the United Mine Workers of America that they will accept the Occupational Disease Act: Tumeleavich v. Motley Coal Company, 61 D. & C. 668, 669.

Anthraco-silicosis is the only disease covered by the act which is to be found in the anthracite mining industry, so it is to be presumed that the parties contracted with special reference to it.

The board has heard many cases involving this disease arising in the anthracite industry, and after a visit to the premises by the writer of its opinion, made at the demand of the Glen Alden Coal Company, it properly concluded:

"The inference is inescapable that [claimant's] employment was responsible for his condition. A realistic view must be taken of the existing facts and circumstances in this case."

Moreover, even if the presumption were not available to claimant, we would be compelled to uphold the board because its finding is amply supported by the testimony. To begin with, claimant never worked anywhere else, so where did he get the disease?

As against the positive testimony of claimant and his witnesses, the board had a right to refuse to accept the testimony of the so-called experts as to tests made after the disability of claimant arose. They were not obliged to accept the results of sporadic tests made on three occasions as accurate representation of the gen-

eral conditions in the breaker as they existed over the extended period of claimant's employment. The board members very properly concluded that they were "of the opinion that the testimony of defendant's safely engineer is of little value in solving the issue raised in this case. His testimony shows the great variation in the dust count and particles of free silica existing at different times. Where, as here, the situation changes not only daily but hourly, quantitative dust tests made on a few specific occasions are of little value."

In McGarvey v. Butler Coal Co. et al., 157 Pa. Superior Ct. 353, where claimant did not take advantage of the statutory presumption in the manner set forth in the Metz case, supra, but undertook to prove that the conditions under which he worked in defendant's mines were such that he was exposed to silica dust, the court said (p. 357) :

"If there is present in the record testimony from which it *could have been inferred* that a silica hazard was an incident to claimant's occupation, the award must be upheld, as this court's authority in compensation cases does not extend to the formation of an independent judgment on controverted questions of fact. Jones v. Philadelphia & Reading Coal & Iron Co., 154 Pa. Superior Ct. 513, 36 A. 2d 172; Plaugher v. American Viscose Corp., 151 Pa. Superior Ct. 401, 30 A. 2d 376. It is pertinent to observe that in the administration of the workmen's compensation statutes there is contemplated a liberal attitude toward the inferences which may permissibly be drawn from the evidence, in aid of the humane and remedial objects of the legislation. York v. State Workmen's Insurance Fund, 131 Pa. Superior Ct. 496, 200 A. 230." (Italics supplied.)

In this case, as in the McGarvey case, claimant's reliance is placed in part upon the medical testimony and in part upon his many years of employment under the conditions described.

We must conclude here, as the court did in the Mc-Garvey case (p. 359) :

"It was within the province of the referee and the board to infer the presence of a silica hazard from the testimony in the record, and as they have done so, and as the findings of fact sustain the conclusions of law and the award, the assignments of error must be overruled."

The fact that defendant attempted to carry its burden of showing claimant's place of work to be free of the hazard by the testimony of its experts does not alter our conclusion. That the Workmen's Compensation Board may reject the testimony of defendant and accept that of plaintiff is so well established as to need no citation of authority.

In our judgment, there is sufficient competent evidence to sustain the findings of fact and conclusions of law.

Accordingly, we enter the following

## Order

Now, June 13, 1952, the exceptions are overruled, the appeals are dismissed, and judgment is directed to be entered in favor of claimant, George Powichka, also known as George Guido, against the Glen Alden Coal Company and the Commonwealth of Pennsylvania; the Glen Alden Coal Company and the Commonwealth of Pennsylvania are directed to pay compensation to claimant at the rate of $25 per week, beginning August 15, 1950, and continuing within the limitations of the Occupational Disease Act.

The weekly payments of compensation shall be prorated by defendants as follows: The Glen Alden Coal Company shall pay 90 percent of each installment, and the Commonwealth of Pennsylvania shall pay 10 percent. Interest shall be payable on deferred installments of compensation from the due date thereof.