Crews, Appellant, *v.* Carey.

Argued December 16, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFF-MAN, JJ. (FLOOD, J., absent).

*John H. Hibbard,* for appellant.

*Charles J. Bufalino, Jr.,* Special Assistant Attorney General, with him *Clyde M. Hughes, Jr.,* Assistant Attorney General, and *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

*James P. Harris, Jr.,* for appellees.

OPINION BY WATKINS, J., March 24, 1966:

This is an appeal from the order of the Court of Common Pleas of Luzerne County affirming the decision of the Workmen's Compensation Board denying compensation to the claimant, Levi T. Crews, on the ground that he was not employed in an occupation having a silica hazard.

The claimant was employed by the anthracite strip mining firm of Carey, Baxter & Kennedy from 1931 to May 31, 1963. He ran draglines and shovels; he loaded rock; he was engaged in blasting and loading; he was engaged in casting overburden; he loaded coal and rock; he did mechanical work in the warehouse; he was a mucker, loading rock after it was drilled and blasted; he did tunneling work; as his health condition deteriorated he went from operating a shovel to mechanical work in the warehouse. The medical testimony is clear that he was totally disabled as the result of anthracosilicosis on January 7, 1964.

Claimant's work record was not disputed and no evidence was offered by any party that he was or was not exposed to silicon dioxide while employed by the defendant. The referee found that the claimant was exposed to a silica hazard from 1931 to May 31, 1963, while employed by the defendant. The referee also concluded that he was entitled to compensation and that defendant company was liable for 60% of the compensation and the Commonwealth for 40%. On appeal, the board determined that the claimant was not so exposed from 1944 to May 31, 1963, and that he had failed in his burden of proof and so denied compensation. On appeal, the court affirmed the decision of the board.

The board and the court below indicated that the decision was controlled by the case of *Scott v. United States Steel Corporation*, 203 Pa. Superior Ct. 459, 201 A. 2d 243 (1964). This was error. The *Scott* case is clearly distinguishable. It was a claim brought under §108(n) of the Occupational Disease Act, as amended, February 28, 1956, P. L. (1955.), 1095, §1, 77 PS §1208(n), which is the catch-all section of the Occupational Disease Act. Under this section which covers diseases not identified in the act as occupational diseases, the burden of proof on the claimant is a heavy one. It is necessary that he must sustain the burden of proving by a preponderance of the evidence that the disease in question, in the *Scott* case, lung cancer, was peculiar to the industry and not common to the general public, i.e., establishing it as an occupational disease within §108(n). In the *Scott* case the claimant failed to sustain this burden.

The instant case is brought under §108(k) of the Act, supra, 77 PS §1208(k), which reads as follows: "Silicosis or anthraco-silicosis (commonly known as Miner's Asthma and hereinafter referred to as anthraco-silicosis) in any occupation involving direct contact with, handling of, or exposure to dust of silicon di-

oxide $(SiO_2)$." This makes anthracosilicosis a specific occupational disease and the burden required in the *Scott* case, supra, does not apply here, if the industry is subject to the hazard of silicon dioxide.

The Court will take judicial notice that the anthracite mining industry is affected with a silicon dioxide hazard. *Powichka v. Glen Alden Coal Co.*, 83 Pa. D. & C. 528. In that case the claimant, although employed in the mining industry, had a specific occupation in a coal breaker. The defendant was required to go forward with the evidence to prove that the breaker was free of the hazard. Thousands of awards have been made to disabled employees of the mining industry as a result of anthracosilicosis. The very name of the disease, anthracosilicosis, commonly known as Miner's Asthma, connects it with the anthracite mining industry. Strip mining is an important part of the mining industry and is affected with the hazard. *Chernetsky v. Wm. Penn Stripping Co.*, 200 Pa. Superior Ct. 277, 188 A. 2d 770 (1963).

Under ordinary circumstances the burden of proof would still be on the claimant to prove that he was exposed to the silica hazard while employed in the anthracite industry. The legislature, realizing the remedial nature of the Act and requiring its liberal interpretation recognized the grave burden on the average claimant to maintain this very technical burden, and so in §301(f) of the Occupational Disease Act, 77 PS §1401(f), the burden of going forward with the evidence to prove that the claimant was not so exposed was shifted to the defendant. The act in question reads as follows: "(f) If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the

course of his employment, but this presumption shall not be conclusive."

. As this Court said in *Metz v. Quakertown Stove Works,* 156 Pa. Superior Ct. 70, 39 A. 2d 534 (1944):

"The Act of 1939 contained a very important and material provision in section 301(f), as follows: 'If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.' It will be noted that the employee is not called upon, in order to get the benefit of this rebuttable presumption to show that the particular factory or plant in which he worked was a silica hazard, but only that the 'occupation or industry' was one in which silicosis was a hazard, leaving it then to the employer to show, if possible, by facts and circumstances within its knowledge and control, that its particular factory or plant had been so conducted or carried on as to avoid or get rid of that hazard. . . .

"The act recognizes that it may be unreasonably difficult for the individual employee claimant to show that his particular place of employment was so conducted or carried on as to be an occupational disease hazard, and therefore provided that if the occupation or industry in which he was employed was one in which the occupational disease from which he is suffering was a hazard, it shall be presumed (but not conclusively) that his disease arose out of and in the course of his employment. If the claimant is required to prove that the particular plant or place of business where he was employed constituted an occupational disease hazard, there would be no need whatever to help out the claimant with any presumption." See also: *DeMascola v. Lancaster,* 200 Pa. Superior Ct. 365, 375, 189 A. 2d

333 (1963) ; *Neary v. Carbondale General Hospital*, 181 Pa. Superior Ct. 189, 194, 124 A. 2d 470 (1956).

It is true that the finding of the board that the claimant was not exposed to a silica hazard is a pure question of fact. See: *Witters v. Harrisburg Steel Corporation*, 183 Pa. Superior Ct. 450, 132 A. 2d 762 (1957). And it is equally true that unless there has been a capricious disregard of competent evidence or inconsistencies between the findings of fact with each other and the conclusions of law and the order, the order must be sustained. *Irvin v. Plymouth Meeting Rubber Div. Linear, Inc.*, 182 Pa. Superior Ct. 280, 126 A. 2d 491 (1956).

However, the facts in this case are that the claimant was totally disabled as a result of anthracosilicosis and that he had been employed in the anthracite strip mining industry from 1931 to May 31, 1963, by the defendant company; and that the anthracite mining industry is infected with a silicon dioxide hazard. This, with the aid of the presumption made out a prima facie case. The claimant was under no duty to prove that he was exposed to a silica hazard in his specific occupation in the industry. It was rather the burden of the defendant to prove that he was not so exposed. His testimony that the dust "was household type and from the cats (caterpillars)", if he had the burden, would not have been competent testimony nor would he have been a competent witness to prove by such testimony that silicon dioxide was present in the air. So, as the appellant contends, this is not competent testimony, on cross-examination, to support the theory of the defendant. The defendant below raised the question as to its liability for 60% of the compensation if an award were made. There is no evidence in this record of any exposure to a silicon dioxide hazard from any party prior to his employment in 1931 in the mining industry, so that, if an award were made, the determination

of the referee of 60% of the compensation to be paid by the defendant and 40% by the Commonwealth was a proper one.

No evidence of any kind was presented by the defendant to rebut the presumption that the claimant's total disability from anthracosilicosis arose out of and in the course of his employment in an industry where the hazard existed. The board arbitrarily and capriciously disregarded the evidence supplied by the presumption.

The order of the court below is reversed and the record is remanded to the Workmen's Compensation Board for an award in accordance with this opinion.

---

DISSENTING OPINION BY MONTGOMERY, J.:

The board found as a fact that "The claimant was *not* employed in an occupation having a silica hazard from 1924 to 1931 and from 1944 to May 31, 1963." In support of this finding the record clearly shows that from 1944 to 1949, the claimant did mechanical work and from 1949 to 1963 he worked in defendant's warehouse. As a mechanic he repaired drills, air compressors, tractors and shovels. As a warehouseman, he "cleaned up, took inventory and moved stuff around", which occupations, as also found by the board, are general in nature and are not recognized as having a silica hazard. The majority rules out the claimant's own testimony that the only dust in the warehouse "was household type and from the cats (caterpillars)", but in my opinion, this was competent evidence for the board's consideration which together with the other evidence as to the general nature of claimant's occupation supported its finding that claimant's occupational disease did not arise out of and in the course of his employment by appellee within four years from the day on which his disability arose.

The majority relies on a presumption, but a presumption of fact gives way the moment proof to the contrary is presented. *Heath v. Klosterman,* 343 Pa. 501, 23 A. 2d 209 (1941).

If claimant is entitled to recover in this case, every stenographer, clerk or other person doing general work in an office of an anthracite coal company, regardless of how many miles away from the mines or coal operation the office may be, would be entitled to the same consideration. I do not believe the Legislature intended such a broad construction of Section 301(f) of the Occupational Disease Act.

I would affirm the board and lower court on the authority of *Scott v. United States Steel Corporation,* 203 Pa. Superior Ct. 459, 201 A. 2d 243 (1964), and *Jaloneck v. Jarecki Manufacturing Co.,* 157 Pa. Superior Ct. 609, 43 A. 2d 430 (1945).

Therefore, I respectfully dissent.

WRIGHT, J., joins in this dissent.