Morrison, Appellant, *v.* Allied Chemical
Corporation.

Argued May 4, 1971. Before BELL, C. J., EAGEN,
O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused November 11,
1971.

*Carl M. Mazzocone,* with him *Charles F. Quinn,* and *Sheer, Mazzocone & Quinn,* for appellant.

*Joseph J. Murphy,* with him *John F. Dougherty, Jr., Robert J. Murphy,* and *Murphy, Veldorale, Dougherty and Katevatis,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, October 12, 1971:

Appellant was employed as a junior chemist by Allied Chemical Corporation. In the course of his employment, he suffered industrial chemical poisoning and was totally disabled for a period and partially disabled for a period thereafter. He filed a claim under the Occupational Disease Act, and was awarded compensation by the referee. The Workmen's Compensation Board reversed the referee, and the board was in turn reversed by the Court of Common Pleas of Philadelphia County. An appeal to the Superior Court resulted in a reversal of the Court of Common Pleas, by a divided court. We granted allocatur.

The case involves a question of statutory construction. Appellant's claim was brought under Section 108(d) of the Occupational Disease Act, 77 P.S. 1208 (d). Section 108(d) provides among the definitions of occupational diseases: "(d) Poisoning by benzol, or by nitro, amido, or amino derivatives of benzol (dinitro-

benzol, anilin, and others), or their preparations or compounds, in any occupation involving direct contact with, handling thereof, or exposure thereto."

The board found as facts the following:

"1. Claimant, during the course of his employment as a 'junior chemist' with defendant from January, 1956 to October 26, 1963, was obliged to handle various industrial chemicals, such as benzol, cumene, acetone, phenol, methylstyrene and others, which chemicals were identified by labels on the bottles which he used, and claimant was exposed to such chemicals.

"2. As a result of his exposure to such chemicals, claimant suffered 'Industrial Chemical Poisoning (Benzol and Others)' from which he was totally disabled from October 27, 1963 to May 28, 1964, and undetermined partial disability thereafter to June 1, 1966."

Despite these findings, the board denied compensation and the Superior Court affirmed that denial on the basis of Section 301(c) of the Act, 77 P.S. 1401(c). Section 301(c) provides: "Compensation for the occupational diseases enumerated in this act shall be paid only when such occupational disease is peculiar to the occupation or industry in which the employe was engaged, and not common to the general population. . . ."

The board concluded that appellant had not met his burden of establishing that the industrial chemical poisoning from benzol and other chemicals which he suffered was peculiar to the occupation or industry in which he was employed while working for Allied Chemical and not common to the general population.

One of the members of the Workmen's Compensation Board, Commissioner Geer, filed the following concurring opinion:

"I believe Section 301(c) defeats the whole purpose of the Occupational Disease Act. If benzol poisoning is defined as an occupational disease then that

should be enough. By common sense, an occupational disease is at least peculiar to the occupation, if not uncommon to the general population.

"Nevertheless, the section is in the Act, has not been removed by the Legislature, so I must concur with my colleagues."

If Section 301(c) were to be interpreted as the Board and the Superior Court have interpreted it in this case, we would be forced to the same pessimistic conclusion as that reached by Commissioner Geer. However, the Occupational Disease Act need not be interpreted so that it appears as irrational as all that. Instead, it should be interpreted according to the rationale developed by the Superior Court in *Crews v. Carey*, 207 Pa. Superior Ct. 461, 464, 218 A. 2d 103 (1966).

In that case, the plaintiff sued under Section 108(k) of the act [77 P.S. §1208(k)], alleging that he had contracted silicosis in his employment with an anthracite strip-mining firm. The defendant and the board both alleged that he had failed to meet the burden of proof established by the case of *Scott v. U. S. Steel Corporation*, 203 Pa. Superior Ct. 459, 201 A. 2d 243 (1964), that the disease was peculiar to the industry in which he was employed. The court held, however, that unlike the *Scott* case, where the claimant was proceeding under Section 108(n) of the act, because the disease he had contracted, lung cancer, was not a specifically enumerated occupational disease, in *Crews* the claimant was proceeding under Section 108(k), seeking compensation for silicosis or anthracosilicosis, a specific occupational disease. Therefore, the court reasoned it was enough for the plaintiff to show that he had contracted the specific occupational disease because the court could take judicial notice that the anthracite-mining industry was subject to the hazard of silicon dioxide.

Likewise, in the instant case, appellant has shown that he contracted an occupational disease specified in the Act: "(d) Poisoning by benzol, or by nitro, amido, or amino derivatives of benzol (dinitro-benzol, anilin, and others), or their preparations or compounds, in any occupation involving direct contact with, handling thereof, or exposure thereto," and that this contact came through his employment in an occupation where he was obliged to handle the above-enumerated chemicals. By definition, benzol poisoning comes only from the handling of benzol, which was what appellant did in his occupation. To say that appellant must now prove that his illness is not common to the general population is to say that appellant must prove that the general population, on most of its working days, is not obliged to handle chemicals like "benzol, cumene, acetone, phenol, methylstyrene . . ." or that the plaintiff in *Crews* should have been required to prove that the general population is not obliged to spend most of its working days in an anthracite coal mine.

We think that a much more reasonable interpretation of the statute is that when the claimant proves that he contracted one of the specifically enumerated occupational diseases in the course of his employment, he need not show more in order to recover under the act.[1]

---

[1] It should be noted that Section 301(f) of the Act, 77 P.S. 1401(f), has the following provision: "(f) If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive." To require a claimant to prove that the specifically enumerated occupational disease which he contracted was peculiar to his occupation would render such a presumption valueless.

The board found that appellant contracted benzol poisoning while working in the Allied Chemical Laboratory. This was all he had to prove. In requiring the claimant to prove more, the board and the Superior Court committed an error of law.

The order of the Superior Court is reversed and the judgment of the Court of Common Pleas is reinstated.

Mr. Justice JONES and Mr. Justice BARBIERI took no part in the consideration or decision of this case.