346 A.2d 6

Justiliano CUEVAS, Appellant,

v.

PLATERS & COATERS, INC. and State Workmen's
Insurance Fund, Appellees.

Supreme Court of Pennsylvania.

Argued Jan. 7, 1975.

Decided Oct. 3, 1975.

36

Joseph Lurie, Philadelphia, for appellant.

Stephen E. Levin, Sp. Asst. Atty. Gen., State Workmen's Ins. Fund, Philadelphia, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Claimant-appellant, Justiliano Cuevas, instituted a claim under the Pennsylvania Occupational Disease Act of June 21, 1939, P.L. 566, §§ 108(g), 108(n), *as amended*, 77 P.S. §§ 1208(g), 1208(n), alleging total disability as a result of a disease contracted during his employment with Platers & Coaters, Inc., a metal plating company. After several hearings, the referee entered an award granting full compensation to claimant-appellant. Upon appeal to the Workmen's Compensation Board, the ref-

eree's award was vacated and the Board determined that claimant-appellant was not entitled to recovery. The Board's decision was sustained by the Court of Common Pleas of Delaware County and the Commonwealth Court. We granted allocatur and this appeal followed.

Claimant-appellant commenced his employment with Platers in September 1963 and remained there in the capacity of a laborer until December 16, 1964. Claimant-appellant introduced testimony to establish that he was required by his employment to work with, and be exposed to, hydrochloric acid, nitric acid and chromic acid. He stated that his duties required frequent carrying and pouring of buckets of acid into large vats, cleaning equipment with an acid solution and when necessary, and standing above open tanks of acid on a catwalk to adjust the machinery.

Claimant-appellant's testimony established that prior to his employment, his health was good and that he had not experienced any respiratory difficulties before his employment with Platers. He complained that during the course of his employment, his eyes and nose frequently became watery, he salivated profusely and had difficulty in breathing. On December 16, 1964, while on a catwalk above an open acid tank, claimant-appellant collapsed and was taken to a hospital by ambulance. He has not been able to work since that date.

Dr. Martin J. Sokoloff testified on Cuevas' behalf that he was suffering from severe chemical bronchitis with marked bronchospasm. He testified that this condition rendered Cuevas totally disabled and unable to pursue gainful employment which required physical exertion.

Cuevas' supervisor challenged claimant-appellant's testimony relating to the exposure to acids required by the employment. The supervisor testified that, to his knowledge, Cuevas had on no occasion been called upon to place acid in tanks. The employer's medical witness, Dr. Harold Israel, diagnosed the illness as severe perennial asth-

ma. It was his opinion that to the extent that the asthma was precipitated by chemical fumes, it should have improved on cessation of the exposure. He concluded that since there was, in fact, no improvement after the employment had terminated, that the employment situation was not a controlling factor in causing the illness but probably a coincidence which might have been compounded by "anxiety". He, however, agreed with claimant-appellant's medical expert that claimant-appellant is now incapable of performing physical work.

██ In reaching his decision awarding compensation, the referee made the following pertinent findings of fact:

"2. From September, 1963 to December 16, 1964, claimant was employed by defendant as an attendant to acid vats at a salary of $50.00 per week.

3. During claimant's employment by the defendant he was exposed to the hazard of poisoning from the fumes of hydrochloric nitric and chromic acids.

4. Prior to his employment by defendant claimant was in good health and had never been treated for a lung or pulmonary condition.

5. During claimant's employment by the defendant he was required to work with and among hydrocholoric acid, nitric acid and chromic acid on a daily basis.

6. On December 16, 1964, while in the course of his employment with the defendant, while on top of an acid tank, claimant collapsed because of the said poisoning.

7. The said poisoning resulted in the condition of chemical bronchitis which has rendered claimant totally disabled from December 16, 1964 to the present time.

8. The disease of chemical bronchitis is not a condition which is common to the public and is peculiar to the industry of the claimant's employment."

Subsequently, the Workmen's Compensation Board, in reaching a contrary view, substituted its findings for those of the referee with respect to Findings Nos. 3, 6 and 7. The Board also disregarded Finding No. 8.[1] The substituted findings of fact submitted by the Board were:

"3. Neither the industry in which Claimant worked nor the occupation he followed was a hazard.

6. Claimant was not exposed to the disease of bronchitis while employed by the Defendant.

7. The disease of bronchitis is not an occupational disease, peculiar to Defendant's industry in general or to the occupation Claimant followed and the disease of bronchitis is common to the general population."

■ Claimant-appellant contends entitlement to relief based upon section 108(g) and in the alternative section 108(n). Section 108 in pertinent part provides:

"Section 108. The term 'occupational disease' as used in this act, shall mean only the following diseases:

\* \* \* \* \* \* \* \*

(g) Poisoning by, or ulceration from, chromic acid, or bichromate of ammonium, bichromate of potassium, or bichromate of sodium, or their preparations, in any

1. "In any such appeal the board may disregard the findings of fact of the referee, and may examine the testimony taken before such referee, and if it deem proper may hear other evidence, and may substitute for the findings of the referee such findings of fact as the evidence taken before the referee and the board, . . . may, in the judgment of the board, require, . . ." 1939, June 21, P.L. 566, No. 284, § 423, 1951, Jan. 2 (1952) P.L. 1811, § 5; 77 P.S. § 1523.

Our scope of review is to determine whether there is substantive evidence to support these findings of fact. *Varner v. Harbison-Walker Refrac. Co.*, 208 Pa.Super. 318, 222 A.2d 458 (1966); *Downing v. Leechburg Mining Co.*, 195 Pa.Super. 574, 171 A.2d 857 (1961).

". . . unless there has been a capricious disregard of competent evidence or inconsistencies between the findings of fact with each other and the conclusions of law and the order, the order must be sustained." *Crews v. Carey*, 207 Pa.Super. 461, 466, 218 A.2d 103, 106 (1966).

occupation involving direct contact with, handling thereof, or exposure thereto.

\* \* \* \* \* \* \* \* \*

(n) All other occupational disease (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation and, (3) which are not common to the general population."

Turning first to claimant-appellant's claim under section 108(g), we have stated that where a claimant proves that he has contracted one of the specifically enumerated occupational diseases in the course of his employment, he need not show more in order to recover. *Morrison v. Allied Chem. Corp.*, 444 Pa. 170, 174, 283 A.2d 75, 77–78 (1971). Testimony by claimant-appellant was offered to support that he, in fact, was required to handle chromic acid, one of the enumerated substances within the subsection and was poisoned as a direct result of this contact. In its findings the Board affirmed the referee's Finding No. 5. This finding accepted claimant-appellant's position that his employment required him to work with chromic acid on a daily basis. In view of this finding, the Board was then necessarily required to make a factual determination based upon the evidence as to whether or not this daily contact with chromic acid during the course of his employment, did in fact cause the malady from which he is presently suffering. Absent a finding, either negative or affirmative on this point, there is no basis which would permit the Board to reach a conclusion as to claimant-appellant's entitlement under sub-section (g). For this reason, the matter must be remanded for further proceedings before the Board.

■ Additionally, a remand is also required under Cuevas' claim predicated upon section 108(n). The Board, in reaching its determination that Cuevas was not entitled under sub-section (n), construed this section in accordance with the earlier law in this jurisdiction. *Per-*

*ez v. Blumenthal Bros. Chocolate Co.,* 428 Pa. 225, 237 A.2d 227 (1968); *Scott v. United States Steel Corp.,* 203 Pa.Super. 459, 201 A.2d 243 (1964); *Porter v. Sterling Supply Corp.,* 203 Pa.Super. 138, 199 A.2d 525 (1964). Under prior cases, it was held that diseases which were common to the general population were not to be considered as compensable under sub-section (n) even though the disease was caused by the employment. Sub-section (n) was conceived to have been limited only to the discovery of " 'new' diseases having their genesis in the claimant's occupation." *Williams v. Spaulding Bakeries, Inc., et al.,* 464 Pa. 29, 346 A.2d 3 (filed this day). The view was rejected in our decision in *Utter v. Asten-Hill Mfg. Co.,* 453 Pa. 401, 309 A.2d 583 (1973).

> "The Superior Court concluded in *Scott* that recovery under Section 108(n) could not be sustained because cancer is neither peculiar to the steel industry nor uncommon in the general public. The underpinnings of the *Scott* decision, and the position urged upon us by the appellees here, is that the legislature intended Section 108(n) to apply only to the discovery of new diseases having their genesis in the claimants' occupations. This interpretation severely limits the usefulness of Section 108(n) as a vehicle for compensation in situations like this one where the decedent's fatal diseases, though not enumerated elsewhere in the act; are nonetheless generated by an occupational hazard. A more reasoned analysis of Section 108(n), and one which we adopt in this setting, is that cancer can be an occupational disease, though it exists in the general public, if it may be shown by competent evidence that a claimant's cancer is peculiar to the claimant's occupation by its causes and the characteristics of its manifestation." Id. at 410, 309 A.2d at 588.

Therefore, the Board's conclusion that the fact that the disease was common to the public in and of itself precluded recovery was clearly erroneous under the new

standard. For that reason also the matter must be remanded to permit the Board to review the record in light of the new standard announced in *Utter, supra.*

In the remand proceedings, each side will be permitted an opportunity to present additional testimony in order to establish their respective positions in accordance with the new standard. *Dunn v. Merck & Co., Inc. et al.,* 463 Pa. 448, n. 7, 345 A.2d 604, n. 7 (filed this date).

The Order of the Commonwealth Court is reversed and the cause remanded to the Workmen's Compensation Board for further proceedings consistent herewith.

It is so ordered.