Evelyn R. Querry, Widow of Milton H. Querry, deceased, Appellant *v.* Pennsylvania Glass Sand Corporation and Commonwealth of Pennsylvania, Appellees.

Argued February 5, 1976, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*Alexander J. Pentecost,* for appellant.

*James S. Routch,* with him *Patterson, Evey, Routch, Black & Behrens,* for appellee, Corporation.

*Mary Ellen Krober,* Assistant Attorney General, for appellee, Commonwealth.

OPINION BY JUDGE KRAMER, April 1, 1976:

This is an appeal by Evelyn R. Querry, widow of Milton H. Querry (decedent), from an order of the Court of Common Pleas of Huntingdon County, dated August 6, 1975, which affirmed a Workmen's Compensation Appeal Board decision denying Querry's claim for benefits under the Pennsylvania Occupational Disease Act.[1] We conclude that both the Board and lower court erred as a matter of law, and remand to the Board for a proper determination.

The decedent had been employed for many years by the Pennsylvania Glass and Sand Corporation (PGSC), a manufacturer of silica sand.[2] The decedent retired due to a lung disability in late 1964 or early 1965, but returned to work as a watchman on November 28, 1965. The decedent's last day of work was March 17, 1968 and his date of death was May 8, 1968.

Querry filed a claim for death benefits under the Pennsylvania Occupational Disease Act on September 9, 1968. The Commonwealth of Pennsylvania was joined as an additional defendant and a hearing was held

---

1. Act of June 21, 1939, P.L. 566, as amended, 77 P.S. §1201 et seq.

2. The *American Heritage Dictionary of the English Language* (1975) defines "silica" as follows:

"A white or colorless crystalline compound $SiO_2$, *occurring abundantly* as quartz, *sand*, flint, agate, and many other minerals, and used to manufacture a wide variety of materials, notably glass and concrete. *Also called 'silicon dioxide'* and formerly 'silex.'" (Emphasis added.)

before a referee. Querry testified that when her husband returned home from work he had dust on his clothes. A fellow employe of the decedent testified as follows:

"Q. How frequently would you see him [decedent] during the twenty-seven years you worked there when he did?

A. Him and I worked the same trick, the night turn. Then after he was transferred over on daylight I saw him about every day because I lived neighbors to him.

Q. Did you observe whether or not there was any dust where he worked?

A. There was dust where he worked and where I worked too.

Q. *What did the dust come from?*

A. *From the grinding and the drying and the mixing of the sand.* It come off the beltways and so forth.

Q. The product of your employer was what? *What did they make at the plant?*

A. *Silica sand* for different places.

Q. Was it possible to have worked there and have not had this *sand dust* get on you?

A. It would get on you, and in you too." (Emphasis added.)

Querry introduced into evidence a medical report by the pathologist who performed an autopsy on the decedent. The report read in pertinent part as follows:

"As I believe is clear from the [autopsy] report, the cause of death in this case in my opinion is active chronic bronchiolitis. I believe this was secondary to the chronic bronchitis and emphysema, both of which can be related to the anthracosilicosis. In the absence of any other known mechanism in this case, I believe one can say that silicosis was the underlying cause of death."

Neither the Commonwealth nor PGSC offered any evidence to rebut the evidence offered by Querry. The only evidence offered by PGSC was testimony indicating that the decedent had previously been employed at the same plant by the Pennsylvania Glass Sand Company and the Pittsburgh White Sand Company.

The referee made the following pertinent findings of fact:

"FOURTH:    The Defendant and the Commonwealth of Pennsylvania had due notice of the death of Milton H. Querry due to silicosis.

FIFTH:    Milton H. Querry was employed by Pittsburgh Sand Company for five years; by Pennsylvania Glass Sand Company for four years; and, by the Pennsylvania Glass Sand Corporation from 1930 to March 17, 1968; his last date of employment. During all these periods of time he was exposed to the dust os [sic] silicon dioxide.

SIXTH:    Milton H. Querry died on May 8, 1968 as a result of silicosis. This disease developed to the point of disablement and death over a period in excess of five years.

SEVENTH:    Milton H. Querry left to survive him, his widow Evelyn R. Querry, and the following minor children, all of whom were living with him and dependent upon him for support at the time of his death: Gloria Querry, born February 17, 1953; Kenneth Querry, born June 10, 1954; Shirley Querry, born December 19, 1955; and Edna Querry, born November 6, 1957.

EIGHTH:     The expense of burial was in the amount of $1,100.00, and has been paid by the claimant-widow.

NINTH:      It has not been conclusively proved that decedent's death was the result of his last exposure to a silica hazard while employed by the defendant."

Based upon the findings, the referee concluded Querry was entitled to compensation payable by the Commonwealth.[3] The Board, in its decision dated July 30, 1970, vacated the referee's fourth, fifth, sixth and ninth findings of fact and substituted the following:

"4. The decedent was not employed by the Defendant in a hazardous occupation.

5. The decedent was not exposed to the hazard of silicon dioxide while employed by the Defendant.

6. Silicosis is not peculiar to the industry or occupation followed by the decedent."

The Board's decision stated that the statutory presumption in Section 301(f) of the Act[4] is not available to Querry unless it is shown that silicosis was a hazard in the decedent's industry and that the decedent was exposed to that hazard. The decision also stated that:

"The burden on the Claimant [Querry] required her to go further and prove that the disease of silicosis is peculiar to the decedent's industry or occupation and not common to the general population. Her proof did not rise to the required degree and compensation

---

3. *See* Section 301(g) of the Act, 77 P.S. §1401(g).

4. Section 301(f) of the Act, 77 P.S. §1401(f) reads as follows:

"f" If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive."

must be denied. See METZ vs. QUAKERTOWN STOVE WORKS, 156 Super. 70 (1944)."

The Board did not have the benefit of our Supreme Court's decision in *Morrison v. Allied Chemical Corporation*, 444 Pa. 170, 283 A.2d 75 (1971), at the time it made its decision, and, as a result, the Board clearly erred as a matter of law regarding the applicable burden of proof.[5] Querry only had to prove that the decedent died from a specifically enumerated occupational disease[6] contracted in the course of his employment. *See Morrison, supra.* Querry might also be eligible for benefits if she can show that the decedent died from a disease which is not specifically enumerated in the Act, but which is peculiar to the decedent's occupation by its causes and the characteristics of its manifestation. *See Utter v. Asten Hill Mfg. Co.*, 453 Pa. 401, 309 A.2d 583 (1973).

Since neither the parties to this case, nor the fact-finder had the benefit of the new standards set forth by the Supreme Court in *Morrison, supra* and *Utter, supra,* this case must be remanded in order that all parties "may

---

5. We also believe that the Board capriciously disregarded competent evidence by finding that the decedent was not exposed to the hazard of dust of silicon dioxide. *See Scobbo v. Workmen's Compensation Appeal Board*, 22 Pa. Commonwealth Ct. 109, 348 A.2d 169 (1975).

6. Section 108(k) of the Act, 77 P.S. §1208(k) reads as follows:

"The term 'occupational disease,' as used in this act, shall mean only the following diseases:

. . . .

"(k) Silicosis, anthraco-silicosis or coal workers' pneumoconiosis (the latter two commonly known as Miner's Asthma and hereinafter referred to as anthraco-silicosis or coal worker's pneumonconiosis) in *any occupation involving direct contact with, handling of, or exposure to* the dust of anthracite or bituminous coal and/or *dust of silicon dioxide (SiO$_2$)*." (Emphasis added.)

be permitted an opportunity to present additional testimony in order to establish their respective positions in accordance with the new standard." *Cuevas v. Platers & Coaters, Inc.,*      Pa.     ,     , 346 A.2d 6, 9 (1975). The Supreme Court has quite clearly indicated that it is improper for this Court, in this type of case, to independently review the record, and determine if Querry has met her burden of proof. *Cuevas, supra; Williams v. Spaulding Bakeries, Inc.,*      Pa.     , 346 A.2d 3 (1975); *Dunn v. Merck & Company, Inc.,*      Pa.     , 345 A.2d 601 (1975).

We therefore

ORDER

AND NOW, this 1st day of April, 1976, the order of the Court of Common Pleas of Huntingdon County, dated August 6, 1975, is hereby vacated, and this case is remanded to the Workmen's Compensation Board for proceedings consistent with the above opinion.